[No. C000564. Third Dist. Aug. 8, 1988.]

MICHAEL O. HARVEY, Plaintiff and Appellant, v.
COUNTY OF BUTTE et al., Defendants and Respondents.

COUNSEL

Michael O. Harvey, in pro. per., for Plaintiff and Appellant.

Quentin L. Kopp, Thomas M. Di Franco, William F. Fitzgerald and Kopp & Di Franco for Defendants and Respondents.

OPINION

BLEASE, J.—This is an appeal in a taxpayer action challenging the validity of an ordinance, adopted by the Butte County Board of Supervisors (Board), which reorganizes the office of the county counsel, resulting in the reduction of existing personnel and an increase in the employment of outside counsel. Plaintiff seeks injunctive relief to abort the program and recover funds paid to outside counsel for litigation services. He appeals from a summary judgment in favor of the Board. He contends that the action of the Board is ultra vires because the contracts with outside counsel involve services which are required by law to be performed by county counsel. We will affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

On July 22, 1985, the Board directed its Chief Administrative Officer (CAO) to conduct "an organizational study of the current County Counsel function." The CAO prepared a written report apparently submitted to the Board on September 25, 1985. The gist of the report is as follows. The county counsel's office presently consisted of the county counsel (appointed pursuant to Gov. Code, § 27640), five deputy county counsels, and two clerical workers. The Board had directed that the amount budgeted for county civil legal services be reduced by $81,000. The county counsel in-

formed the CAO that this would require deletion of two deputy county counsel positions. Each attorney in the office of county counsel was assigned certain litigation matters and assigned advisor responsibility for a segment of the county departments. County departments reported that the assigned attorneys were accessible for oral advice but "unable to render timely written opinions on simple or complex legal issues." As a result departments accepted oral advice or proceeded on their own.

Over time there had been a trend toward increased use of special counsel because of conflict of interest problems and because in some specialized areas of the law it was more economical to seek outside expertise. Costs of services provided by the office of county counsel are approximately $40 per hour: costs of special counsel averaged $75-90 per hour.

There were four alternative proposals for provision of county civil legal services: (1) appointment of a part-time county counsel; (2) continuance of the status quo; (3) use of the existing arrangements supplemented by more modern equipment and increased subordinate attorney or paralegal staff; (4) changing the organization to a county counsel as law office manager, with two "Chief Deputies" and with increased use of special counsel. The underlying concept of the lattermost alternative is as follows. "[T]he County Counsel appointed by the Board of Supervisors will be responsible for all duties as identified in law, with primary emphasis as chief legal advisor to the Board of Supervisors, Chief Administrative Officer, as well as the judges and Butte County Grand Jury. [¶] In this approach, there would be a change in the overall method of implementing the duties and responsibilities. We foresee County Counsel and his deputies remaining accessible to provide legal direction on routine inquiries of county operating departments. This is a must. The goal of this organizational concept would be to improve the existing need for written responses, be it legal opinions or contract development. These latter needs would be met by the use of outside legal counsel specializing in various aspects of county governmental matters. The emphasis of the attorneys then would be to assist county operating departments on defining the issues, selecting appropriate attorneys, and managing the workload. This then becomes the distinguishing characteristic which essentially does not exist today."

While acknowledging that hourly costs of outside counsel were higher, the CAO suggested that "[t]he services of outside counsel offer numerous advantages," i.e., greater efficiency in areas of specialized knowledge, larger staff, more modern equipment. Accordingly, it concluded: "This office believes that the best way to achieve in bringing about the desired economies, efficiencies and management control is to pursue a change in direction from

the present organizational concept. We are recommending implementation of the law office manager concept."

On September 27, 1985, plaintiff, Michael Harvey, at the time a deputy county counsel, submitted a letter in opposition to the recommendation of the CAO. Harvey argued, in essence that: (1) the principal reasons for the increasing cost of county civil legal services were its self-insured status and case law upholding county liability in federal civil rights actions; (2) extrapolation of current costs of outside counsel for litigation showed that if all litigation were assigned to outside counsel the cost would greatly exceed continuance of the status quo; (3) the CAO was not competent to evaluate the administration of county legal services because he was not an attorney or law office administrator; (4) the present staff of the office of county counsel were experienced and talented; (5) adoption of the CAO's recommendation would result in waste of county funds for which members of the Board potentially would be subject to personal liability.

On October 1, 1985, the Board considered the report and on a vote of 3-2 passed a motion accepting the recommendations of the CAO. On October 15, 1985, the Board waived the first reading of an ordinance creating the two new chief deputy county counsel positions and authorized the county personnel director to commence recruitment, on a 5-0 vote.

On November 4, 1985, Harvey filed the complaint in this lawsuit alleging that the actions of the Board were ultra vires and seeking injunctive and declaratory relief. His application for a temporary restraining order was denied. On November 5, 1985, the county counsel advised the Board that in his opinion the proposed reorganization of his office was lawful. On that date the Board waived the second reading of the ordinance creating the chief deputy county counsel positions. The effective date of the ordinance was December 6, 1985. On November 13, 1985, plaintiff's application for a preliminary injunction was denied. On January 10, 1986, plaintiff's position as a deputy county counsel was abolished.

After the Board voted to adopt the CAO recommendations new litigation was assigned to outside counsel pursuant to the reorganization scheme. Under this scheme the county counsel decides either to assign "litigation matters" to the chief deputy county counsels or if "the litigation" is complex, requiring the specialized resources of a private law firm, to private counsel with the approval of the Board of Supervisors.

## DISCUSSION

Plaintiff contends that the trial court erred in granting summary judgment because the undisputed facts show that the actions of the Board in

reorganizing the office of the county counsel and in contracting for litigation services are ultra vires. That tenders questions involving the statutory authority of the Board.

## I

Preliminarily, we reject plaintiff's argument that the Board's actions may be invalidated on the theory that outside contracting may prove to be an extravagant method of meeting the county's needs for civil legal services. This theory is dependent upon the invalidity of the action of the Board and hence upon the claim that its action was ultra vires.

Plaintiff relies solely upon *Stanson* v. *Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1] which held that a public official who, in good faith, authorizes an *improper* expenditure of public funds is not strictly liable for reimbursement of the expenditure but is personally liable for failure to exercise due care in authorizing the expenditure. Plaintiff transposes the standard for restitution into the measure of illegality to which it pertains; he suggests that every public expenditure is subject to judicial examination for reasonableness and if judged unwise may be forbidden as an inchoate violation of an official duty of due care. *Stanson* v. *Mott* provides no warrant for such a fundamental alteration of the separation of powers doctrine. The measure of the impropriety of an expenditure, within the meaning of *Stanson,* is not ill-wisdom but ultra vires. (See, e.g. *Skidmore* v. *West* (1921) 186 Cal. 212, 220 [199 P. 497]; *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 842 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391].)

## II

That brings us to plaintiff's largely unqualified argument that the Board has no power to enter into contracts for outside legal services and that accordingly it had no power to reorganize the office of the county counsel to that end or to contract, as it did, for litigation services.

Plaintiff's cause of action as a taxpayer's action must be maintained, if at all, under Code of Civil Procedure section 526a which authorizes an action to prevent the illegal expenditure of municipal funds. The county was granted a summary judgment, which lies only if it, as the moving party defendant, establishes that there is no triable issue of material fact.

Whether there is such a triable issue of material fact is measured by the pleadings, the rules of pleading, the applicable substantive law, and the construction placed upon the pleadings by the parties. (See *Pultz* v. *Holger-*

*son* (1986) 184 Cal.App.3d 1110, 1114-1115 [229 Cal.Rptr. 531].) Here, the material facts, the reorganization ordinance adopted by the Board and the litigation actions taken by the Board pursuant to it, are undisputed. Plaintiff's theory is that civil legal services authorized by the ordinance and the litigation services actually contracted for are ultra vires. He reasons that such services, which it is claimed are within the competence of county staff to perform, are delegated by law to and must be performed by the county counsel. The plaintiff's argument runs headlong into statutes which authorize the Board's actions.

### A.

The plaintiff's argument turns on the claim that the authority granted the county to establish and maintain the office of county counsel restricts the county to the use of that office for civil legal services. The merits of that claim are resolved by the reach of the statutes which establish the office and which authorize contracts for specified outside services. We begin with the statutory authority for the establishment of the office of county counsel.

The statutes which govern the provision of civil legal services to counties are contained in the Government Code.[1] Unless otherwise provided, the district attorney, an officer of the county (§ 24000, subd. (a)), is charged with providing civil legal services to county government, e.g. defending and prosecuting litigation (§ 26521), advising the board of supervisors (§ 26526), and providing written opinions to county and district officers on matters pertaining to their duties (§ 26520).

The county may appoint a county counsel to perform such services pursuant to the authority of a county charter (Cal. Const., art. XI, § 4, subd. (c)) or statute (§ 27640). In either event, the county counsel supplants the district attorney in the provision of civil legal services. (§§ 27642, 26529.) If the board of supervisors appoints a county counsel pursuant to section 27640, it "shall furnish the county counsel with such assistants as will enable him to perform properly the duties of his office." (§ 27644.) Such an appointment is for a four-year term during which the county counsel may only be removed for cause. (§ 27641.) The County of Butte, a charter county (Stats. 1917, ch. 15, p. 1791), has not provided for legal services in its charter. Accordingly, it must be deemed to have appointed a county counsel pursuant to section 27640.

---

[1] All references to sections hereafter are to sections of the Government Code unless otherwise made apparent.

## B.

Notwithstanding these provisions a county is authorized to contract with private counsel for specified legal services.

A board of supervisors, by a two-thirds majority vote may employ counsel to assist the county counsel in the conduct of litigation. (§ 25203.)[2] The board may also contract for special services, including legal services. (§ 31000.)[3] Lastly, section 31001,[4] provides that in a county where the charter does not create an office of county counsel the board of supervisors may contract with counsel to assist the district attorney in providing representation and advice to county officers. We note that, at the time that the predecessor to section 31001 was enacted, the only manner in which the office of county counsel could be established was by provision in the charter since the predecessor to section 27640 had not yet been enacted. (Stats. 1929, ch. 755, § 23, p. 1462; Stats. 1941, ch. 618, § 2, pp. 2075-2076.)

## C.

The question of the scope of power of a board of supervisors of a county to contract for county legal services has a venerable case law history, which bears upon the reading we give the current statutory system.

---

[2] Section 25203 provides: "The board shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party; by a two-thirds vote of all the members, the board may employ counsel to assist the district attorney, county counsel, or other counsel for the county or entity in the conduct of such actions; provided, however, that the board may authorize county officials, who are not attorneys, to initiate and conduct litigation in small claims court on behalf of the county."

[3] Section 31000 provides: "The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. The board may pay from any available funds such compensation as it deems proper for these special services. The board of supervisors may, by ordinance, direct the purchasing agent to enter into contracts authorized by this section within the monetary limit specified in section 25502.5 of the Government Code."

[4] Section 31001 provides: "The board of supervisors of any county not having a charter which creates the office of county counsel may employ and contract with counsel to assist the district attorney in representing and advising it and all district officers in all matters and questions of law pertaining to their duties and to civil legal questions affecting the county or districts."

In the early cases it was held that a county board had the power to engage outside counsel for purposes of conducting litigation by implication from the power to control litigation to which the county was a party and the generic power to do those things necessary to discharge its other powers. (E.g. *Hornblower* v. *Duden* (1868) 35 Cal. 664, 670-671; *Lassen County* v. *Shinn* (1891) 88 Cal. 510 [26 P. 365].) This power was not displaced by the authority given a district attorney to bring and defend all suits to which the county is a party. (*Hornblower, supra,* 35 Cal. at pp. 667, 670-671.) The Supreme Court reasoned that in a variety of circumstances such a rule would be imprudent. "[The District Attorney] may be incompetent, or sick, or absent from the county, or engaged in other business, or the business in hand may be of such magnitude and importance as to demand, on the part of the Board, in the exercise of such foresight and care only as business men bestow upon important matters, the employment of additional counsel." (*Id.,* at p. 671.)

This authority was distinguished and held not to permit the board of supervisors to contract for other than litigation services or services in contemplation of impending litigation in *Merriam* v. *Barnum* (1897) 116 Cal. 619 [48 P. 727]. In that case a contract with outside counsel for advice and assistance concerning reconstruction of the county courthouse, including recovery of insurance, was held void. The *Merriam* opinion notes that by statute the district attorney "is the legal advisor of the board of supervisors, and it is made his duty by law to attend its meetings, and give all necessary advice." (*Id.,* at p. 621.) "From the statutes above referred to it is clearly the intention of the law that the district attorney, and no one else, shall be and act as the legal advisor of the board, with power to the board, however, to employ additional and special counsel to assist the district attorney in the prosecution or defense of suits to which the county may be a party." (*Id.,* at p. 622.) The rationale of this limitation is that if boards are free to employ outside counsel for advice the likely result would be abuse of the power and unjustifiable expenditure of county funds. (*Id.,* at pp. 624-625.)

This limitation was extended in *Merced County* v. *Cook* (1898) 120 Cal. 275 [52 P. 721] to void a contract for litigation services in recovering license taxes. The court discerned in an amendment of the statute which gave the board of supervisors authority to direct litigation a purpose to limit the power of the board of supervisors to contract for outside legal services.[5] The amendment added the phrase " 'And to employ counsel to assist the district attorney in conducting the same.' " (*Id.,* at p. 276.)

---

[5] As we shall later show, the statute to which the court referred is a forerunner of Government Code section 25203 which authorizes a county to appoint a county counsel without the authority of a charter.

"There is no doubt that the enactment of this amendment was occasioned by the somewhat common and indiscriminate action indulged in by boards of supervisors of hiring outside attorneys to conduct county litigation. There can be no question but that the district attorney of the county is the officer authorized by law to take charge of and conduct such litigation. He is an officer of the county elected by the people for that purpose and no board of supervisors had the arbitrary power to displace him in the conduct of its litigation and substitute other attorneys. If such were the law, in many cases the power placed in the board would be abused; and the abuse of that power was the occasion of the amendment to which we have adverted. Giving the statute as it now stands a broad and liberal interpretation, we believe it only places in the board of supervisors power to employ counsel to assist the district attorney in conducting the prosecution and defense of all suits to which the county is a party, and to employ counsel to prosecute and defend all suits to which the county is a party, where the district attorney of the county for good cause is held disqualified from acting as such counsel." (*Merced County, supra,* 120 Cal. at p. 277.)

The next case in this area, by way of dictum, shifts back to the view that, at least as to litigation, the board of supervisors has broad discretion to employ counsel. In *Woolwine* v. *Superior Court* (1920) 182 Cal. 388 [188 P. 569] the Supreme Court considered an attempt by a district attorney to compel his substitution as attorney of record for the county in three pending actions. In the course of holding that the result sought could not be attained by writ of mandamus, the Supreme Court adverted to the prior cases on employment of outside counsel and asserted, "But all the cases hold that the exercise of the power is a matter of discretion and is not open to review by the courts, except, perhaps, for fraud." (*Id.,* at pp. 390-391.) The court did note *Merriam's* distinction between advice and litigation, but took no notice of the "disqualification" limitation proclaimed in *Merced County* v. *Cook*, merely citing that case as authority for the broader assertions it rejected.

The next and most recent opinion of the Supreme Court concerning employment of outside counsel is *Handler* v. *Board of Supervisors* (1952) 39 Cal.2d 282 [246 P.2d 671]. In that case the court upheld a contract with an outside attorney to oppose, before the California Public Utilities Commission, an application of a railroad for a fare increase. (*Id.,* at p. 284.) The attorney had specialized for 15 years in public utility rate regulation. (*Ibid.*) The *Handler* opinion reasons that the board of supervisors had authority to enter into such a contract under Government Code sections 31000 and 31001. The opinion does not cite any of the antecedent case law and the only elaboration of the application of these sections is the assertion that

they "clearly" give authority for a contract with the attorney as a "[furnisher] of special services." (*Handler, supra,* at p. 286.)

The final noteworthy case is *Jaynes* v. *Stockton* (1961) 193 Cal.App.2d 47 [14 Cal.Rptr. 49]. The Court of Appeal held that a school district was not authorized to employ outside counsel to obtain advice when the services of county counsel were available. The *Jaynes* opinion addresses Government Code section 53060 which authorizes public and municipal corporations and districts to contract for special services, an apparent clone of section 31000. (See 19 Ops.Cal.Atty.Gen. 153, 154 (1952).) *Jaynes* distinguishes *Handler, supra,* on the ground that it did not address the question whether the services there were special, by reason of their character or unavailability "in house." (*Jaynes, supra,* 193 Cal.App.2d at p. 57.)

*Jaynes* holds that there is no authority to contract for outside legal services unless such authority is expressly conferred upon the contracting agency or the services are unavailable "in house" for reasons beyond the agency's control. (193 Cal.App.2d at p. 54.) It asserts two supporting principles. First, wasteful duplication of expense may otherwise occur. (*Ibid.*) Second, the statutes assigning the obligation to perform such services to public officers should be construed as vesting such responsibility and authority in the designated public officers. (*Id.,* at p. 55.) Hence, if the county counsel is assigned the duty to provide certain legal services, that allocation should not be undercut by contracts with outside counsel unless necessary. (See *ibid.*; also cf., e.g., 15 Ops.Cal.Atty.Gen. 46, 48-49 (1950), "It is apparent that the Legislature has imposed upon the board of supervisors of the various counties a duty to budget annually sufficient moneys not only to pay the salary of the district attorney and county counsel, but also to furnish each of them with deputies, assistants, clerks, office space and other facilities necessary in order to enable each of them to properly perform the duties imposed upon him by law.")

## D.

■ Plaintiff broadly challenges the authority embodied in the ordinance reorganizing the Butte County Counsel office and its implementation in the contracting for litigation services. Plaintiff has never distinguished between litigation services, special services, or advice, save for the implicit concession that services that are not within the competency of county counsel staff may be obtained by contract elsewhere. The report of the CAO, adopted by the Board and pursuant to which the reorganization took place, provides in substance that: "The goal of this organizational concept would be to improve the existing need for written responses, be it legal opinions or contract development. These latter needs would be met by the use of outside

legal counsel specializing in various aspects of county governmental matters. The emphasis of the attorneys then would be to assist county operating departments on defining the issues, selecting appropriate attorneys, and managing the workload. This then becomes the distinguishing characteristic which essentially does not exist today."

This statement of policy is unclear concerning the nature of the work proposed to be placed with outside counsel; whether matters he proposed would be contracted out would include matters of "unspecialized" advice, or only litigation and matters within the ambit of legal "special services." However, the affidavits of county counsel in support of the motion for summary judgment disclose that the policy has been implemented so far only by contracts for litigation services, authorized by the vote required under section 25203.

That section (see fn. 2, *ante*) provides the requisite authority to contract for outside legal services for purposes of litigation. It provides that the board of supervisors may employ outside counsel to assist in the conduct of litigation by a two-thirds vote. This authority is subjected to no textual constraint beyond the requirements that the matter be litigation and that the action be taken by the requisite extraordinary majority vote. Hence, on its face the statute consigns the decision concerning employment of outside counsel for such matters to the judgment and discretion of the requisite majority of the Board. Since the actions taken by the Board comply with this restraint there is no reason to assume that the Board in the future will not abide by the statutory restraints.

As to matters other than litigation, the policy adopted by the Board can be read as consistent with the provisions of section 31000, which authorizes contracts for *special services* "with persons specially trained, experienced, expert and competent to perform the special services." Sections 25203 and 31001 presumably serve different functions. The principal purpose of an authorization for engaging "special services" is to obtain services which are unavailable from public sources. (See, e.g. *Jaynes, supra*, 193 Cal.App.2d 47.) Accordingly, it would appear that section 25203 is addressed to circumstances where litigation counsel services might be viewed as potentially available "in house."

The only source of misgivings concerning this conclusion derives from *Merced County* v. *Cook, supra*, 120 Cal. 275. In that case, as related, the Supreme Court construed a similar provision as intended to limit the power of boards of supervisors to contract for outside counsel litigation services. If section 25203 were derived from the statute in issue in that case our reading would confront a substantial impediment. However, that is not the case.

The statute addressed by *Merced County* v. *Cook, supra,* 120 Cal. 275, is contained in the County Government Act of 1883, Statutes 1883, chapter 75, section 25, subdivision 17. The gloss placed upon the amendment to that provision is derived from the view of the Supreme Court that the motive for the amendment was a response to perceived abuses by boards of supervisors of the earlier implied authority to engage outside counsel. However, at the time the Supreme Court promulgated this interpretation the County Government Act of 1883 containing the provision had been repealed as to this provision by enactment of the County Government Act of 1897. (Stats. 1897, ch. 277, §§ 25, subd. 16 and 232.) The 1897 Act contained a further amendment of the statute addressed to county litigation as follows. "Boards of Supervisors . . . have jurisdiction and power . . . [t]o direct and control the prosecution and defense of all suits to which the county is a party, and, by a two-thirds vote of all the members, may employ counsel to assist the District Attorney in conducting the same." (§ 25, subd. 16, p. 463.)

The implication of the 1897 amendment is that the Legislature decided to bar the improvident employment of outside counsel by means of the requirement of an extraordinary majority vote. Thus, at the time the Supreme Court was fashioning a substantive constraint on the perceived abuse by interpretation of the statute, the Legislature had already acted to cure the problem with an incompatible political constraint. This consideration was overlooked in *Merced County* v. *Cook, supra.* ■ A case is not authority for points neither considered nor decided. (*People* v. *Meyers* (1987) 43 Cal.3d 250, 265, fn. 5 [233 Cal.Rptr. 264, 729 P.2d 698].) In our view, in these circumstances, the judicial gloss on the language of the Act of 1883 was stillborn and did not carry over into the Act of 1897 from which section 25203 is derived.

This view is reinforced by the lack of attention accorded the holding of *Merced County* v. *Cook* in subsequent case law. The Legislature, in the various enactments stemming from this provision of the County Government Act of 1897 should not be held to have accepted that case as a binding construction in view of its subsequent citation as authority for a broad power to contract for outside legal services.

■ For these reasons we conclude that section 25203 governs the circumstances in which boards of supervisors may contract with outside counsel for litigation services. The only constraint imposed by this section is that the specific services must be authorized by a two-thirds majority vote; in the case of the Butte County Board of Supervisors four of the five members. The check against improvident expenditures for such purposes is the requirement of recurrent authorizations by an extraordinary majority of the Board. Presumably if contracting for outside legal services for litigation

proves to be an extravagant method of meeting that need, the members of the board of supervisors will change course or face the adverse consequences in the electoral arena. Accordingly, so long as the requisite majority of the Board approves contracts for such services, they are not illegal under the theory advanced by plaintiff.

On this record we also see no conflict between the Board's policy by which the challenged reorganization was accomplished and the limitations imposed by section 1000 to contracts for special services. There is no triable issue of material fact pertaining to plaintiff's claim of imminent waste.

The judgment is affirmed.

Puglia, P. J., and Marler, J., concurred.