[No. C005311. Third Dist. Nov. 21, 1989.]

COUNTY OF SUTTER et al., Plaintiffs and Respondents, v. BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Defendant and Appellant.

COUNSEL

Richard H. Koppes and Richard B. Maness for Defendant and Appellant.

Darrell W. Larsen, County Counsel, and James Scanlon, Deputy County Counsel, for Plaintiffs and Respondents.

OPINION

**BLEASE, Acting P. J.**—This appeal tenders the question whether family support investigators employed by the District Attorney of the County of Sutter are entitled to enhanced retirement benefits (Gov. Code, § 21251.13)[1] as "county peace officers" under section 20021.5 when his practice and policy is to enforce parental support obligations primarily by civil rather than criminal action.

The Board of Administration, Public Employees' Retirement System (PERS) administratively determined that the employees meet the statutory criterion of section 20021.5—that their "principal duties are to investigate crime and criminal cases"—notwithstanding the district attorney's election to employ them primarily in connection with civil proceedings. PERS seeks

---

[1] All statutory references are to the Government Code unless otherwise indicated.

reversal of the judgment granted County of Sutter overturning its decision. We will affirm the judgment.

*Facts and Procedural Background*

In April 1985 Sutter County sent a letter to PERS requesting that its employees in the position entitled family support investigator not be classified as "county peace officers." The letter asserted that under the policy of the district attorney not to pursue Penal Code section 270 remedies, except in rare cases, these employees did not meet the statutory criterion. On June 6, 1985, PERS sent a reply indicating agreement with the claim of the county. However, in February 1986 PERS staff requested a legal opinion from PERS staff counsel concerning the matter. In April the staff counsel replied that in his opinion the employees met the criterion of the statute because willful nonsupport of a child is a crime as defined by Penal Code section 15 regardless of the policy of the district attorney to pursue only civil remedies.

On May 1, 1986, PERS sent another letter informing the county that its legal staff reviewed the classification of the position, now entitled "Family Support Interviewer," and concluded that the employees met the statutory criterion and that PERS intended to reclassify these employees. The county requested a hearing on the matter (§ 20133) and a hearing was conducted before an administrative law judge. At the hearing the following pertinent evidence was adduced.

Within the office of the District Attorney in Sutter County there is a family support division. The supervisor is a deputy district attorney and he has a legal secretary. There are four interviewers (the employees in issue in this case), three clerk typists who support the interviewers, a bookkeeper, and three assistant bookkeepers. The district attorney also has two criminal investigators who are not in the family support division.

The criminal investigators review all felony complaints to determine if there are leads that have not been followed up. In major criminal cases they interview witnesses, transport witnesses and, in unusual cases, provide security for witnesses. They assist in trial preparation for criminal cases, preparing exhibits and taking necessary photographs. They have peace officer status and powers of arrest.

The family support interviewers talk with witnesses to obtain information to locate absent parents and collect child support. They prepare complaints and petitions for civil actions to establish and enforce child support obligations. They arrange blood tests and necessary transportation. They assist in

trial preparation of civil actions to establish and enforce child support obligations. They serve papers in connection with such litigation.

The present District Attorney of Sutter County was elected in June 1982. In his opinion prosecution of parents under section 270 of the Penal Code is not a financially effective method of collecting child support. His policy is to enforce child support enforcement obligations principally through civil proceedings and to invoke criminal proceedings only in extremely unusual cases. The last criminal action under Penal Code section 270 in Sutter County was filed in March 1977. Violations of support orders are pursued by means of civil contempt proceedings rather than by filing criminal contempt of court actions.

It is possible under the policy of the district attorney that a case of nonsupport might be prosecuted criminally. If a decision were made to prosecute a nonsupport case as a criminal action the case would be reassigned from the family support division to the criminal division. In such an event a criminal investigator would be assigned to the case.

The administrative law judge issued a proposed decision adverse to Sutter County which was adopted by PERS. The essential reasoning of the decision is as follows. "The fact that violation of child support requirements are crimes and that these crimes are investigated for purposes of settling cases or turning them over to a Deputy District Attorney for litigation should bring the position of Family Support Interviewer within the statutory requirements regardless of the current District Attorney's policy of prosecution." Sutter County successfully petitioned for a writ of mandate overturning the decision.

*Discussion*

■ We begin with the text of section 20021.5, which defines "County peace officer."[2] (See *Nunez* v. *Superior Court* (1983) 143 Cal.App.3d 476,

---

[2] Section 20021.5 provides: " 'County peace officer' means the sheriff and any officer or employee of a sheriff's office of a contracting agency, except one whose principal duties are those of a telephone operator, clerk, stenographer, machinist, mechanic, or otherwise, and whose functions do not clearly come within the scope of active law enforcement service even though the employee is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement service, but not excepting persons employed and qualifying as deputy sheriffs or equal or higher rank irrespective of the duties to which they are assigned. Any other provision in this part to the contrary notwithstanding, 'county peace officers' shall also include and mean any inspector, investigator, detective, or person with a comparable title, in any district attorney's office of a contracting agency whose principal duties are to investigate crime and criminal cases and who receives compensation for this service."

480 [191 Cal.Rptr. 893].) The term includes any "investigator" whose "principal duties are to investigate crime and criminal cases . . . ."

This provision reflects the fact that the duties of the district attorney may extend beyond those of public prosecutor (§ 26500) to the prosecution or defense of civil causes of action (see e.g. §§ 26520-26530; *Harvey* v. *County of Butte* (1988) 203 Cal.App.3d 714, 720 [250 Cal.Rptr. 65]) which may require the assistance of investigators (see § 26508). Employment in the latter capacity is outside the scope of "county peace officer" status for the apparent reason that the peculiar risks and stresses that attend an investigation in contemplation of a criminal prosecution do not extend to the investigation of civil matters.

Section 20021.5 is a part of the Public Employees' Retirement Law. (§ 20000.) Under this scheme local government employees may be eligible for retirement benefits either as "local miscellaneous members" or as "local safety members." (§ 20013.) " 'Local safety member' includes all local policemen, firemen, safety officers, and county peace officers employed by a contracting agency who have by contract been included within this system." (§ 20019.) Local safety members receive superior retirement benefits compared to local miscellaneous members. (Compare §§ 21251.13 and 21252.5) Presumably the superior benefits are a reward granted in recognition of the employment hazards and stress to which local safety members are subjected.

■ Section 20021.5 defines county peace officers for purposes of entitlement to status as a local safety member. Enhanced retirement benefits are derivative of that status. (§ 21252.5) The limitation of eligibility for such status of investigators employed by a district attorney to those who investigate "crime and criminal cases" has an obvious parallel. It is the limitation of eligibility of sheriff's employees, local safety officers (§ 20019.4), harbor or port police officers (§ 20019.37), and local policemen (§ 20020) to those who are principally involved in "active law enforcement service."[3] That term means "law enforcement services normally performed by police[,] . . . the active enforcement and suppression of crimes and the arrest and detention of criminals." (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 578 [108 Cal.Rptr. 293], holding animal control officers do not come within the scope of this term in enforcing animal control laws.) ■ The parallel impels the view that the phrase "investigate crime and criminal cases" does not mean the investigation of parental nonsupport cases for purposes of civil enforcement.

---

[3] Section 20021.5 makes employment in "active law enforcement" the general test of peace officer status.

Family support investigators in a county where the policy and practice of the district attorney is to pursue civil causes of action in virtually all non-support cases are on the civil side of this criminal/civil divide. Their investigations are neither for the purpose of detecting crime nor for the purpose of prosecution of criminal cases. It is inappropriate to call such work *investigation of crime* when the question whether there has been a crime is immaterial to the endeavor. Assuming that the policy may lead to an occasional rare prosecution, it cannot be said the "principal duties" of these investigators "are to investigate crime and criminal cases."

■ PERS advances but one semantic argument in response. It claims that this reading does not account for the distinction between "crime *and* criminal cases." (Italics added.) PERS reasons that "crime," as defined in Penal Code section 15, includes the offense of willful nonsupport proscribed by Penal Code section 270. It claims that when a child support investigator makes inquiries about nonsupport he or she is in fact investigating behavior of the nonsupporting parent that is a crime, regardless of the policy of the district attorney not to so treat the matter.[4] Consequently, if there is no "criminal case" because of this policy there is nonetheless a "crime" under investigation and the inclusion of both "crime" and "criminal cases" indicates that the investigation of *either* meets the criteria. We note that this reading of the statute turns the "and" into an "or" but assume for the sake of argument that this alchemy could be justified. Nonetheless, the argument is fanciful at best.

To investigate connotes an intentional act measured by the end in view. Thus "to investigate crime and criminal cases" means that the end in view of the investigation is precisely to determine the criminal character of the conduct under review. Here, that is not the case given the district attorney's civil enforcement policy.

Moreover, the distinction drawn by PERS presupposes that the district attorney had dual civil and criminal child support enforcement authority at the time the language was enacted. That was not the case. At the time section 20021.5 was first enacted (Stats. 1947, ch. 597, § 1) the office of district attorney had no civil authority to enforce child support obligations. That authority came some 14 years later. (See Stats. 1961, ch. 1784, pp. 3795-3798; Stats. 1951, ch. 709; see now Welf. & Inst. Code, § 11476.) An enactment cannot be read as contemplating a distinction of no substan-

---

[4]The claim is overdrawn because it assumes that every investigation of a child support matter involves a crime. However, the criteria of the crime of nonsupport under Penal Code section 270 and the civil obligation of support, e.g., under Civil Code section 196, are not identical. There may be nonsupport revealed by investigation which is not criminal because it was not willful, e.g., the nonsupporting parent may not have been aware of his paternity.

tive consequence. Consistent with this conclusion, the only plausible construction is that "to investigate crime and criminal cases" refers to "the detection of crime and the gathering of evidence to be used in the prosecution of criminal cases . . . ." (*Hicks* v. *Board of Supervisors* (1977) 69 Cal.App.3d 228, 241 [138 Cal.Rptr. 101]; see also, *Cunning* v. *County of Humboldt* (1928) 204 Cal. 31 [266 P. 522].)

■ PERS next argues that its reading of the statute is entitled to deference as an interpretation by an agency charged with administering a statutory scheme. (See, e.g., *Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 820 [111 Cal.Rptr. 841].) PERS asserts that its decision reflects its longstanding interpretation of section 20021.5. The record belies this assertion. From all that appears the particular point in issue was not resolved until the staff counsel for PERS rendered an opinion in response to the questions arising from this controversy. PERS points to no regulation that it has promulgated. Its position therefore is merely a litigation position of PERS. (See *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593].) That position is grounded upon nothing esoteric. It is nothing but the legal reasoning of staff counsel. Having considered that reasoning we find it clearly unpersuasive for the reasons given. That is all the deference that is warranted under these circumstances. (See *California Trout, Inc.* v. *State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 606-607 [255 Cal.Rptr. 184].)

■ PERS also claims that section 20021.5, as pension legislation, must be liberally construed in favor of the employee or applicant, citing *Heaton* v. *Marin County Employees' Retirement Bd.* (1976) 63 Cal.App.3d 421, 429 [133 Cal.Rptr. 809]. It is incontestable that the pension legislation is subject to liberal construction. (E.g., *Knight* v. *Bd. etc. Employees' Retirement* (1948) 32 Cal.2d 400 [196 P.2d 547, 5 A.L.R.2d 410].) However, the applicability of this canon is predicated upon the assumption that section 20021.5 is ambiguous. There is no ambiguity here. An ambiguity arises only if there is a material uncertainty in the application of the statutory language to the facts upon which the claim of coverage is predicated. (Cf. *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1986) 177 Cal.App.3d 855, 858-859 [223 Cal.Rptr. 246].) That requires that there be more than one construction in issue which is semantically permissible, i.e. more than one usage which makes sense of the statutory language given the context and applicable rules of usage. (*Ibid.*) "Seldom [is] . . . the interpretive implication of [the liberal construction] classification . . . so clear as conclusively to resolve questions of interpretation without the necessity for resort to other aids and guidelines. As with all of the other rules of statutory construction, the decision to apply a broad or narrow construction, and the factors influencing judicial attitudes regarding coverage of a statute are

subject to all of the other aids of statutory construction, both intrinsic and extrinsic." (2A Sutherland, Statutes and Statutory Construction (4th ed. 1984) § 58.01, p. 706, fns. omitted.) Thus, where as here the statute, read in the light of the rules of language usage applicable to the specific application in contention, clearly denies a benefit, the canon of liberal construction is unavailing.

The judgment is affirmed.

Carr, J., and DeCristoforo, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 1, 1990.