[No. C020727. Third Dist. Sept. 29, 1997.]

JAMES KENNETH CORY, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION OF THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Appellant.

**COUNSEL**

Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston and Ann Perrin Farina for Plaintiff and Appellant.

Richard K. Koppes and Maureen L. Reilly for Defendant and Respondent.

## OPINION

**RAYE, J.**—Plaintiff James Kenneth Cory served as both California State Controller and a member of the California Legislature. Now retired and collecting pension benefits, Cory challenges the Board of Administration of the Public Employees' Retirement System (PERS) in its calculation of his retirement benefits. Initially, Cory and PERS disagreed over which Government Code section applied: Government Code section 9359.12, subdivision (a), governing pensions of "legislators," or Government Code section 9359.1, governing pensions for "mixed" service in both the Legislature and as a constitutional officer.[1] PERS later offered Cory pension benefits under section 9359.12 but based those benefits on Cory's salary as a member of the Assembly. Cory filed a petition for writ of administrative mandamus, arguing benefits under section 9359.12, subdivision (a) should be based on his salary as Controller. The trial court denied the petition. On appeal the parties cleave to their original positions: Cory argues the "plain meaning" of section 9359.12 supports his interpretation; PERS counters that section 9359.12 must be read in the context of the entire legislative framework of the Legislators' Retirement Law (LRL), section 9350 et seq. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties agree on the few pertinent facts. Cory served in the Assembly from 1967 to 1975. In 1975 Cory was elected to the constitutional office of State Controller, and remained Controller until January 1987. Cory retired at age 49 in 1987 with 20 years of total service in the Legislators' Retirement System (LRS).

PERS determined section 9359.1, subdivision (c) which covers "mixed service" members applied and calculated Cory's retirement benefits accordingly. Cory disagreed, arguing section 9359.12, subdivision (a) applies.[2]

Cory filed a statement of issues with PERS, requesting benefits under section 9359.12 calculated based on his salary as Controller. Following a hearing, the administrative law judge (ALJ) issued a detailed decision.

The ALJ considered the two statutes and determined *both* applied to Cory as an alternative means of calculating his pension benefits. In reviewing the

---

[1] All further statutory references to the Government Code unless otherwise noted.

[2] The parties stipulated that there are at least seven persons who have mixed service (service as both a legislator and constitutional officer) and have served during or after the term beginning in 1967.

evidence, the ALJ discovered PERS itself had offered Cory benefits calculated pursuant to section 9359.12. The ALJ found "[t]he fact that PERS calculated one of Mr. Cory's retirement benefit options pursuant to the formula contained in Government Code section 9359.12 is pivotal in this matter, as is the fact that all of his service credits for the purposes of making the computation were treated as having been served in the Legislature."

The ALJ set forth the calculations argued by each party:

1) PERS's calculation of Cory's benefits under section 9359.12:
 $1,067.67 per month
 $12,812.04 per year

2) PERS's calculation of Cory's benefits under section 9359.1, subdivision (c):
 $1,416.67 per month
 $17,000.04 per year

3) Cory's calculation of his benefits under section 9359.12:
 $2,200 per month
 $26,400 per year

The dispute, the ALJ reasoned, centered on how benefits were to be calculated under section 9359.12. The ALJ considered Cory's proposed interpretation of section 9359.12 and found it fatally flawed. The ALJ endorsed PERS's interpretation of section 9359.12, and found Cory had a choice between benefits offered under section 9359.1, subdivision (c) or section 9359.12, as calculated by PERS. PERS adopted the proposed decision of the ALJ without modification.

Cory filed a writ of administrative mandamus challenging PERS's decision. PERS answered. Following written and oral argument, the trial court denied the petition for mandamus. Following entry of judgment, Cory filed a timely notice of appeal.

DISCUSSION

I. *Standard of Review*

In determining the scope of coverage under the LRL, we independently determine the proper interpretation of the statute. (*San Miguel Consolidated Fire Protection Dist.* v. *Davis* (1994) 25 Cal.App.4th 134, 146 [30 Cal.Rptr.2d 343].) Statutory interpretation is a question of law; we are bound

neither by evidence on the question presented in the trial court nor by the trial court's interpretation. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

## II. *Dueling Statutes*

The parties present the issue before us as one of dueling statutes, suggesting that our function is to simply choose between two conflicting statutes. As will become clear, our task is a bit more involved. Nevertheless, it is useful to set out the relevant statutes and the competing interpretations offered by the parties.

Cory contends his retirement benefits should be determined under section 9359.12, subdivision (a) which states, in pertinent part: "Any contrary provisions of Section 9359.1 or Section 9360.9 notwithstanding, and subject to the further limitations in subdivision (b), the retirement allowance of any member of the Legislators' Retirement System *who serves as a legislator* during or after the term commencing in 1967 shall be the sum of: (1) the amount determined by application of the formula provided by Section 9359.1 to the first five hundred dollars ($500) per month *of salary payable to the legislator at the time of his or her retirement*, plus (2) an amount equal to 3 percent of the amount of such salary in excess of five hundred dollars ($500) per month multiplied by the number of years credited the member, or two-thirds of the amount of such salary payable to the legislator at the time of his or her retirement, whichever is the lesser . . . ." (Italics added.)

On appeal PERS argues, as it argued in the administrative hearing, that Cory's benefits can be calculated *only* under section 9359.1, subdivision (c) which states: "The retirement allowance for a member *part of whose credited service was rendered as a Member of the Senate or Assembly and part of whose credited service was rendered as the Insurance Commissioner or as an elective officer of the state whose office is provided for by the Constitution, other than a judge* (and other than a Member of the Senate or Assembly) is the sum of (1) an annual amount equal to five percent (5%) of all the compensation, at the time payment of the allowance falls due, to the officer holding the highest salaried office which the member held at any time during his or her service prior to retirement, multiplied by the number of years of service with which the member is credited at the time of his or her retirement, not to exceed eight (8) years, plus, if the member is credited with 24 or more years of service, (2) one and two-thirds percent (1 2/3%) of the compensation to which the five percent (5%) rate is applicable under subparagraph (1) of this subdivision for his or her first eight years of credited service, multiplied by the number of years of service rendered as the

Insurance Commissioner or as an elective officer of the state whose office is provided for by the Constitution, other than a judge and other than a Member of the Senate or Assembly, with which the member is credited at the time of his or her retirement, not to exceed 12 years of that credited service in excess of the eight years referred to in subparagraph (1) of this subdivision. If, however, the member would be entitled to receive a greater allowance under subdivision (a) (b), or (d) of this section if all of his or her credited service had been rendered as a Member of the Senate or Assembly or as the Insurance Commissioner or as an elective officer of the state whose office is provided for by the Constitution other than a judge (and other than a Member of the Senate or Assembly), then all of his or her credited service shall be deemed to have been rendered as a Member of the Senate or Assembly or as such other elective officer, and he or she shall receive a retirement allowance computed under subdivision (a), (b), or (d) of this section, whichever is greater." (Italics added.)[3]

Cory argues section 9359.12, subdivision (a) by its very wording applies to all LRS members who served as "legislator[s] during or after the term commencing in 1967" even if they have also served as constitutional officers. According to Cory, the term "legislator" at the very least applies to him based on his service in the Assembly from 1967 to 1975. Further, the scope of the term is expanded beyond its normal meaning by section 9351.3 to include constitutional officers. As to any conflict between section 9359.12

---

[3]Section 9359.1, subdivisions (a) and (b) state: "(a) The retirement allowance for a member all of whose credited service was rendered as a Member of the Senate or Assembly except as provided in subdivision (d) is an annual amount equal to five percent (5%) of the compensation payable, at the time payments of the allowance fall due, to incumbent Members of the Senate or Assembly, multiplied by the number of years of service with which the member is credited at the time of his or her retirement, not to exceed 15 years. In no event shall any retirement allowance payable under this chapter to any such member exceed the compensation payable to Members of the Legislature at the time the payment of the allowance is made, except that the retirement allowance of any such member who is credited with more than 15 years shall be increased by an amount equal to 3 percent of the compensation payable, at the time payment of the allowance falls due, to incumbent Members of the Senate or Assembly for each year or fraction of a year in excess of 15 years. [¶] (b) The retirement allowance for a member all of whose credited service was rendered as the Insurance Commissioner or as an elective officer of the state whose office is provided for by the Constitution other than a judge (and other than a Member of the Senate or Assembly) the sum of (1) is an annual amount equal to five percent (5%) of the highest compensation received by the officer while serving in that office, multiplied by the number of years of service with which the member is credited at the time of his or her retirement, not to exceed eight (8) years, plus, if the member is credited with 24 or more years of service, (2) one and two-thirds percent (1⅔%) of the compensation to which the five percent (5%) rate is applicable under subparagraph (1) of this subdivision for his or her first eight years of credited service, multiplied by the number of years of service in excess of eight years with which the member is credited at the time of his or her retirement, not to exceed 12 years of such credited service in excess of the eight years of service referred to in subparagraph (1) of his subdivision."

and section 9359.1, Cory argues the Legislature "has clearly provided that the specific and more recently adopted provisions of § 9359.12 control over those of § 9359.1." That result is achieved by the language of section 9359.1, subdivision (d): "The provisions of sections 9359.11 and 9359.12 shall control over any conflicting provisions of this section." This language, Cory contends, indicates the Legislature believed some LRS members might qualify for benefits under either section, and the Legislature determined section 9359.12 should prevail.

In contrast to the "plain meaning" approach urged by Cory, PERS offers an argument grounded in the history and legislative framework of the LRL. According to PERS, this historical/legislative context guides and controls any interpretation of the individual statutes which comprise the LRL. From its reading of history, PERS discerns a clear legislative purpose that would be subverted if section 9359.12, subdivision (a) is applied to retired constitutional officer/legislators. We discern something of value in the arguments of both Cory and PERS.

■ "When interpreting a statute our primary task is to determine the Legislature's intent. . . . In doing so we turn first to the statutory language, since the words the Legislature chose are the best indication of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218], citation omitted.) However, " '[T]he "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)" (*People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

■ "It is incontestable that pension legislation is subject to liberal construction." (*County of Sutter* v. *Board of Administration* (1989) 215 Cal.App.3d 1288, 1295 [264 Cal.Rptr. 233].) Ambiguity or uncertainty in pension legislation is to be resolved in favor of the pensioner. (*Guelfi* v. *Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297, 303 [193 Cal.Rptr. 343].) However, the purpose of the general rule that ambiguities should be resolved in favor of the employee is to effectuate legislative

intent. This rule of liberal construction should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended. (*City of Huntington Beach* v. *Board of Administration* (1992) 4 Cal.4th 462, 472 [14 Cal.Rptr.2d 514, 841 P.2d 1034].)

██ Although the parties have presented this as a case of dueling statutes, we find no irreconcilable conflict. Section 9359.1 subdivision (c) applies to Cory. He served as a member "part of whose credited service was rendered as a member of . . . the Assembly and part of whose credited service was rendered as . . . an elected officer of the state . . . ." However, section 9359.12 also applies to Cory as a "member of the Legislator's Retirement System who serves as a legislator during or after the term commencing in 1967 . . . ." Though PERS now asserts that only section 9359.1, subdivision (c) can apply to Cory, PERS tacitly acknowledged the applicability of section 9359.12, by offering Cory benefits computed according to its provisions.

Thus, both section 9359.12 and section 9359.1, subdivision (c) apply to Cory. Section 9359.12 applies to Cory as a member of the Legislature; section 9359.1, subdivision (c) applies more specifically, delineating Cory's mixed service. By its terms, section 9359.1, subdivision (c) gives members the option of a higher benefit if such is available by reference to section 9359.1, subdivision (a), (b) or (d). A higher benefit under section 9359.12 would similarly be at the option of the member. PERS appears to have construed section 9359.1 in this fashion, offering Cory an opportunity to select the more advantageous of the benefits computed under section 9359.12 or 9359.1, subdivision (c). Therefore, the two statutes provide alternative, not competing, statutory schemes for calculating benefits.

The real conflict between the parties stems from a disagreement over the computation of benefits under section 9359.12. This schism centers on the definition of the word "legislator," for from this definition flows the determination of whether the benefit to be computed under section 9359.12 must be based on salary earned as a member of the Senate or Assembly, or, as Cory argues, salary earned as a senator, assemblymember *or* constitutional officer. In addition, the definition of "legislator" impacts the length of service used in computing the benefits. Under Cory's theory, all 20 years of service in the Assembly *and* as Controller must be used in determining benefits.

*The meaning of "legislator."*

In its ordinary and common meaning, "legislator" means "One who makes laws; a member of a federal, state or municipal lawmaking body; a senator,

representative, assemblyman." (Black's Law Dict. (6th ed. 1990) p. 900, col. 2.) In calculating Cory's benefits under section 9359.12, PERS employed this definition, determining benefits based on Cory's salary and service in the Assembly.

Cory concedes PERS offered him retirement benefits under section 9359.12. However, according to Cory "this option was offered to him under a fiction that 'all service occurred as legislative,' that is, as if he served only in the Legislature and ignoring his service as Controller. . . . Since LRS retirement benefits are based, in part, on a member's salary at time of retirement, and the salary of a member of the Legislature is lower than that of the Controller, this would result in substantially lower benefits to Mr. Cory than those to which he is entitled based on his retirement salary as Controller."

To overcome this hurdle, Cory must reconcile the language of section 9359.12, subdivision (a) which states benefits are to be calculated based on the "salary payable to the *legislator* at the time of his or her retirement" (italics added) with his status as an assemblymember/Controller. Cory finds support in section 9351.3 which provides a definition of legislator: " 'Legislator' means a Member of the Assembly or a Member of the Senate, an elective officer of the State whose office is provided by the Constitution, the Insurance Commissioner, or a legislative statutory officer."

Cory inserts that definition into section 9359.12, subdivision (a) and interprets the section as covering "any member of the Legislators' Retirement System who serves as [an elective officer of the state whose office is provided by the Constitution] during or after the term commencing in 1967." The statute requires benefits to be calculated based on the "salary payable to the [elective officer of the state whose office is provided by the constitution] at the time of his or her retirement . . . ." According to Cory, this means a retirement benefit based on his salary as Controller.

Cory's interpretation thus relies on a literal reading and application of "legislator" as defined in section 9351.3. However, section 9350.1, governing definitions under LRL, provides: "*Unless the context otherwise requires, the definitions and general provisions set forth in this article govern the construction of this chapter.*" (Italics added.) As Cory acknowledges section 9351.3's definition of legislator does not apply to every use of the term in the LRL. Thus, it does not apply to section 9359.11 pertaining to legislators who departed office before 1967; within the context of the LRL, section 9359.11 only applies to former members of the Assembly or Senate, although nothing in the text of the statute so provides. The statutory context

also counters Cory's efforts to engraft the section 9351.3 definition into section 9359.12.[4] There is no reason to believe the Legislature intended the meaning of "legislator" as used in section 9359.12 to differ from its meaning in section 9359.11.

*The statutory context.*

In *Walsh* v. *Board of Administration* (1992) 4 Cal.App.4th 682 [6 Cal.Rptr.2d 118], we undertook an exhaustive review of the historical context in which existing pension statutes were enacted. A critical historical event was the voters' approval in 1966 of a constitutional amendment converting the Legislature into a full-time body. Prior to 1966 salaries of senators and assemblymembers were set by the California Constitution and could be modified only by vote of the people. A part-time Legislature was paid a part-time salary, a modest sum of $6,000 per year and the voters were indisposed to approve salary increases; as we noted in *Walsh*, between 1954 and 1963, the voters rejected four measures to increase legislative salaries. *In contrast, salaries of constitutional officers were set by statute, with frequent increases.* Because legislative salaries were largely frozen, legislative retirement benefits, which were tied to the salary of incumbent members, also remained modest and largely static until 1963 when the Legislature enacted a cost-of-living adjustment, retroactive to 1954 with annual adjustments thereafter.

The prospect of a full-time Legislature had enormous implications for legislative retirement benefits. From the beginning, legislative retirement was calculated at 5 percent of the salary of incumbent legislators multiplied by years of legislative service, not exceeding 15 years. (§ 9359.1 & *Lyon* v. *Flournoy* (1969) 271 Cal.App.2d 774, 785 [76 Cal.Rptr. 869].) A 1961 change provided an additional 2 percent per year of service in excess of 15 years. A 1963 change raised the 2 percent rate to 3 percent.[5] In connection with the constitutional revision, legislation was passed dramatically increasing legislative salaries from $6,000 to $16,000.[6] Unless changes were made in the retirement formula, legislators who retired prior to the constitutional

---

[4]It is also apparent from the language of section 9395.12 that the expansive definition of "legislator" in section 9351.3, which includes legislative statutory officers, is inapplicable. Section 9359.12 directs that part of the legislator's retirement benefits be calculated using the formula in section 9359.1. However, section 9359.1 has no application to legislative statutory officers, whose benefits are calculated in accordance with section 9359.10.

[5]In contrast the formula for constitutional officers, reflecting the larger salaries of those LRS members, was 5 percent of the compensation of the incumbent in the office last held, multiplied by the number of years, not to exceed *eight years.* (§ 9359.1, subd. b.)

[6]The Constitution was also changed to empower the Legislature to increase their salaries by statute, but with a 5 percent annual cap.

revision would receive a dramatic windfall: retirement benefits calculated on the basis of postrevision salaries, together with a cost-of-living inflator. Retirement income would in many cases greatly exceed salaries earned while serving in the Legislature.

To avoid unwarranted windfall benefits to members and make the proposed salary increase more palatable to the voters, the Legislature altered the proposed constitutional amendment to specify that retirement benefits could not be based on the new, higher legislative salary unless the retiree served during or after the term commencing in 1967. (*Walsh* v. *Board of Administration, supra,* 4 Cal.App.4th at pp. 693-695.) A separate legislative package, linked to voter approval of the constitutional amendment, provided for the salary increase and implemented the pension restrictions. Sections 9359.10, 9359.11, and 9359.12 were a part of that package. Section 9359.1 pertaining to constitutional officers was unaffected.

This legislative plan for the computation of retirement benefits contained a separate statute for each of the classifications of LRL members setting forth a formula for the computation of that classification's benefit. Legislators with service before 1967 have their benefit computed according to section 9359.11. Legislators with service during or after 1967 have their benefit calculated according to section 9359.12.

These statutes were an effort by the Legislature to normalize retirement benefits between legislators with service before 1967, and those after 1967 when salaries were much higher, and accordingly, had higher contribution levels. In certain circumstances more than one statute is applicable, particularly in the case of legislators with service both before and after 1967.

LRS members who served exclusively as constitutional officers have their benefits computed according to section 9359.1, subdivision (b). This section contains a limitation of eight years of service credit in the computation, to normalize the substantially higher salaries received by constitutional officers compared with members of the Senate and Assembly. LRS members with mixed service as a legislator and constitutional officer have their benefits computed according to section 9359.1, subdivision (c), which also contains an eight-year service credit limit to normalize the benefit, as it is to be calculated based on the substantially higher constitutional officer salary base. Legislative statutory officers have a separate statute for the computation of their benefits; section 9359.10. The language of sections 9359.1 and 9359.10 was not altered by the 1966 amendments.

Cory's interpretation of "legislator" would completely undermine this statutory scheme. A constitutional officer with 20 years of credited service

under section 9359.1, subdivision (b) would be limited to eight years of service in computing benefits. If the constitutional officer were able to use section 9359.12 to compute benefits, the officer would avoid the eight-year limit, resulting in much higher benefits.

Under Cory's reading of section 9359.12, all constitutional officers with more than eight years of service would receive substantially higher benefits under section 9359.12 than under section 9359.1, subdivision (b), rendering the latter statute meaningless. Similarly, no mixed service member with eight or more years of post-1967 service would opt for a benefit computed according to section 9359.1, subdivision (c), when a higher benefit is available under section 9359.12. To construe "legislator" as Cory demands would render these sections with their eight-year limitation superfluous, enabling LRL members to use *all* years of service to calculate benefits.

Nothing in the legislative history reflects a legislative intent to render sections 9359.1, subdivisions (b) and (c) superfluous. The Legislature continued to amend section 9359.1 after the enactment of section 9359.12, indicating the Legislature's intent that all sections of the LRL continue to be viable.

Cory argues that in several LRL statutes the Legislature has made its intention to restrict application of the statute to legislators, as that term is commonly understood by using the words "Members of the Senate or Assembly." Cory contends since this specific language is used in some LRL statutes, the Legislature's failure to do so in section 9359.12 reveals an intent to use the broader definition of section 9351.3.

As the ALJ noted: "No one contends Government Code section 9359.12 or the LRL for that matter are models of legislative drafting art. It is clear that the statutes are redundant in places, use interchangeable terms in others, and do not set forth inclusions and exclusions clearly enough to avoid disputes such as this one. . . . The fact that the Legislature used the word 'legislator' in the statute instead of the more specific and precise words 'Member of the Senate or Assembly' is one fact to consider in construing the statute and seeking its legislative intent. In this instance it is not determinative, as throughout the LRL the Legislature has, perhaps carelessly, used these terms interchangeably. The interchangeability of these terms is indicative of the legislative intent in section 9359.12 to define 'legislator' by its ordinary and commonly understood meaning, which is coextensive with that of Member of the Senate or Assembly."

■ Moreover, "When a legislature defines the language it uses, its definition is binding upon the court even though the definition does not

coincide with the ordinary meaning of the words. . . . If, however, the definitions are arbitrary, result in unreasonable classifications or are uncertain, then the court is not bound by the definition." (1A Sutherland, Statutes and Statutory Construction (5th ed. 1992) The Structure of a Statute, § 20.08, p. 90, fns. omitted.)

■ In the present case, incorporating Cory's definition into the language of section 9359.12 would yield bizarre results. The ALJ provides one example: "Assuming a member of the LRL with the same 20 years as Mr. Cory, but 19 of which were as a legislator and one of which was as a Constitutional Officer. This person will have made substantially less payroll contributions toward the member's own retirement than Mr. Cory made, yet will receive the same retirement benefit as will Mr. Cory (assuming the same highest salary) if his construction of section 9359.12 is adopted. The application of Mr. Cory's contention would allow this member to reap a windfall and receive a significantly increased benefit based upon the one year of substantially higher salary, and be allowed to tack all 19 years of service at the much lower pay and contribution level to spike the benefit substantially. By the same token, Mr. Cory's contention will permit him to receive the same retirement benefit as a Constitutional Office member with 20 full years of service (assuming the same highest salary), despite only 12 years of such Constitutional officer service himself. Mr. Cory would receive the same retirement as this hypothetical member, despite eight years of much lower salary and contributions."

Although the Legislature has the power to produce such disparate results, we cannot presume such an intent in the present case. The Legislature's intent to limit and prevent inequitable results is reflected in section 9359.1, subdivisions (b) and (c), where constitutional officer and mixed service members are limited to a maximum of eight years of service when the higher constitutional salary is used to compute the benefit.

The LRL presents us with a statutory plan that was initially straightforward, but the inevitable tinkering which takes place in an effort to confront specific problems and the subsequent additions and deletions have seriously muddied the waters. Despite this murkiness, the basic statutory scheme, with its interdependent and integrated sections remains intact. Application of Cory's definition of "legislator" in section 9359.12 would seriously disrupt any balance within the statutory scheme, rendering sections inoperable and yielding inequitable results. PERS's definition of "legislator" according to its common and ordinary meaning leaves all of the provisions of the LRL effective and viable. ■ "[S]tatutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another."

(*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 [285 Cal.Rptr. 86, 814 P.2d 1328].) Cory's proposed construction seeks to isolate section 9359.12 and force upon it a meaning that is at odds with both the legislative intent and the text and context of the language of the statute. Therefore, we find PERS correctly interpreted the language of section 9359.12 and affirm the trial court's judgment.

### DISPOSITION

The judgment is affirmed. PERS shall recover costs on appeal.

Scotland, Acting P. J., and Callahan, J., concurred.