[Civ. No. 6433. Fourth Dist. Sept. 6, 1961.]

EDWARD A. SMITH, Respondent, v. NEIL NETTLESHIP
et al., as Members of the Retirement Board of the San
Diego County Employees Retirement Association, Ap-
pellants.

Henry A. Dietz, County Counsel, Bertram McLees, Jr., Assistant County Counsel, and Joseph Kase, Jr., Deputy County Counsel, for Appellants.

Jack G. Whitney for Respondent.

GRIFFIN, P. J.—Plaintiff and respondent Edward A. Smith brought this action against defendants and appellants, Neil Nettleship and others, as members of and constituting the Retirement Board (hereinafter referred to as ''Board'') of the San Diego County Employees Retirement Association, organized under the County Employees Retirement Act of 1937 as amended. (Gov. Code, §§ 31450 et seq.) The Board

is vested with the authority and responsibility for the management of said Association and the system.

## FACTS

There is no substantial disagreement between plaintiff and defendants as to the facts. They may be thus summarized: Plaintiff was first employed as a deputy of the Marshal of San Diego Judicial District in 1941, and since September 1953 has held the rank of sergeant. He became a member of the San Diego County Retirement Association on the first day of the month following his employment. He remained a member until January 1, 1954, when, by his election, he became a safety member of said organization. (See Gov. Code, § 31469.3, defining "safety member" as an enforcement officer whose principal duties consist of active law enforcement. Any other member is a "regular member.") During his membership and safety membership, he has contributed monthly from his compensation to the San Diego County Retirement Fund at the prescribed rates of contribution and is currently, and since July 1954 has been contributing each month to said fund at the rate of 10.82 per cent of his compensation.

The San Diego County Retirement System came into existence on July 1, 1939, under the provisions of the County Employees Retirement Act of 1937, now Government Code, chapter 3 of part 3, division 4, title 3 (see §§ 31450 to 31822).

The defendants are the duly elected or appointed, qualified and acting Board of Retirement of said system and have held office as members of said Board for at least three years last past. As said Board, they are vested with the authority and responsibility for the management of said system. Government Code, section 31525, provides that: "The board may make regulations not inconsistent with this chapter."

Section 31527, subdivision (f), added in 1957, provides that the Board may provide for periodic physical examinations of safety members, at county expense. Government Code, § 31532, provides that: "Sworn statements and individual records of members shall be confidential . . . except insofar as may be necessary for the administration of this chapter . . ."

In conformity to section 31527, subdivision (f), *supra*, the Board adopted regulations. Regulation XI thereof provides for periodic physical examination of safety members of the retirement system and provides for removal from safety mem-

bership of a member who fails to take the prescribed physical examination upon notice. Section 2 thereof states:

"Each Safety Member, who on the effective date of this Article has not been given a physical examination by the County within the preceding two years, shall take such physical examination prior to January 1, 1959. Every Safety Member shall be reexamined every two years."

Section 4 provides: "The Board shall promulgate recommended minimum physical standards."

Section 5 provides: "The physician making the examination shall report whether or not the employee meets the recommended minimum physical standards. A copy of each report of a physical examination given pursuant to this Article shall be forwarded to the Board and to the employee. The appointing authority of the employee examined shall be furnished a detailed report of the examination upon request. Reports of physical examinations and detailed reports of examinations prepared pursuant to this Article shall be confidential and not open to public inspection."

Section 6 states as follows: "Where an examination discloses that an employee fails to meet the recommended minimum physical standards, the Board may require the employee to be reexamined at any time or from time to time."

Section 7 states: "Each physical examination and re-examination required by this Article shall be given at the expense of the County and shall be given by a physician designated by the County Director of Public Health or this Board."

Section 8 says: "Any Safety Member who fails or refuses to take a physical examination or re-examination required by this Article within 30 days after written notice to the employee to take such examination shall forfeit his status as a Safety Member and thereafter be a member as distinguished from a Safety Member; provided, however, such employee may be restored by the Board to the status of a Safety Member upon a determination by the Board that such failure or refusal should be excused on the ground of the employee's mistake, inadvertence or excusable neglect."

At the time of plaintiff's appointment as deputy marshal, he did not and was not required to take a physical examination. On January 28, 1959, plaintiff was notified to appear at the San Diego County Hospital for a physical examination. He refused and still refuses to do so. On March 11, 1959, defendants set the matter of plaintiff's refusal for hearing

before said Board and gave plaintiff due notice thereof. Prior to the hearing, defendants were temporarily enjoined from proceeding further by a restraining order issued from the superior court in this action.

After trial of the issues, the court found generally Government Code, section 31527, subdivision (f), and article XI of the Board's regulations to be unconstitutional and not retroactive as applying to plaintiff herein. The grounds of unconstitutionality claimed by plaintiff and as found by the trial court were: (1) that the act and the regulations provide for periodical physical examination of safety members and do not require such examination as to regular members and accordingly there is no reasonable distinction between these classes. (Citing such authority as *Werner* v. *Southern Calif. etc. Newspapers*, 35 Cal.2d 121 [216 P.2d 825, 13 A.L.R.2d 252] ; *Franchise Motor Freight Assn.* v. *Seavey*, 196 Cal. 77 [235 P. 1000].) We see no merit to this contention. A safety member is one engaged in *active law enforcement* or active fire suppression. (See Gov. Code, § 31469.3.)

■■ It is a fundamental rule of constitutional law recognized in all jurisdictions in this country that legislation is not discriminatory and does provide equal protection if it is based upon a classification which does not apply to every resident within the jurisdiction, provided that the classification is reasonable and the legislation operates equally upon all members of the class. (*Sacramento Mun. Util. Dist.* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 684, 693 [128 P.2d 529] ; 12 Am.Jur. § 476, p. 141, § 478, p. 145; and cases cited in 11 Cal.Jur.2d § 272, p. 718 and § 273, p. 720.) ■■ It is equally established that the power to classify vests in the Legislature a wide discretion. (12 Am.Jur. § 482, p. 156; 11 Cal.Jur.2d § 277, p. 726.) ■■ Application of these rules to the legislation under review leaves no question of the constitutionality of this legislation on the first ground of attack. Safety membership is itself a special classification of the employees eligible for membership in the San Diego County Retirement Association. Government Code, section 31451, recites that:

"The purpose of this chapter is to recognize a public obligation to county and district employees who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation for future services and to provide a means by which public employees who become incapacitated

may be replaced by more capable employees to the betterment of the public service without prejudice and without inflicting a hardship upon the employees removed.''

Under Government Code, sections 31724 and 31725, the Board is authorized and it is its duty to retire a member upon a proper showing of permanent physical or mental incapacity under certain prescribed retirement benefits (see Gov. Code, §§ 31726, 31726.5, 31727 and 31727.2), and may require him to undergo a medical examination. (See Gov. Code, § 31729.) Permanent incapacity for the performance of duty shall in all cases be determined by the Board and if the proof received, including any medical examination, shows to the satisfaction of the Board that the member is permanently incapacitated physically or mentally for the performance of his duties in the service, it shall forthwith retire him for disability, under certain prescribed retirement benefits. (See Gov. Code, §§ 31726 and 31726.5.) A medical examination, under Government Code, section 31729, may be required of any disability retirement beneficiary under age 55, and under Government Code, section 31731, if such person refuses to submit to medical examination, his pension shall be discontinued until his withdrawal of such refusal, and if his refusal continues for one year, his retirement allowance shall be cancelled. These sections appear to apply mainly to a member. As to a safety member, Government Code, section 31720.5, provides that when such member has completed 15 years or more of service and developed heart trouble, it shall be presumed by the Board and the court, in absence of evidence to the contrary, that such heart trouble is an injury occurring in and arising out of his employment.

Considering the duties imposed upon the Board by statute, it cannot be said that the classification is unreasonable or that it is not applicable to all within that class who continue in service after the adoption of Government Code, section 31527, subdivision (f). There is nothing contained in subdivision (f), section 31527 *itself* that would impair the obligation of plaintiff's contract of employment. (*Cornell* v. *Harris*, 15 Cal.App.2d 144 [59 P.2d 570]; *Taylor* v. *Board of Education*, 31 Cal.App.2d 734 [89 P.2d 148]; *Dodge* v. *Board of Education*, 302 U.S. 74 [58 S.Ct. 98, 82 L.Ed. 57]; *Risley* v. *Board of Civil Service Commrs.*, 60 Cal.App.2d 32 [140 P.2d 167]; *Gilmore* v. *Personnel Board*, 161 Cal.App.2d 439 [326 P.2d 874]; *MacMillan Co.* v. *Clarke*,

184 Cal. 491 [194 P. 1030, 17 A.L.R. 288]; 45 Cal.Jur.2d §§ 34, 35, p. 559.)

▮ Next, it is argued that subsection (f), *supra*, is an unconstitutional gift of public funds in violation of article IV, section 31 of the Constitution. The requirement of a periodical physical examination of safety members is not for the benefit of the safety members or any private person or organization, but solely to facilitate the performance by the Board of its duties under the County Employees Retirement Law of 1937. That this use will be for a public use is apparent. ▮ It is well established that with legislative authorization the use of public funds for a public purpose does not violate the Constitution. (*County of Alameda* v. *Janssen,* 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141].)

▮ Then follows the contention that subsection (f) of section 31527, *supra,* constitutes an unconstitutional delegation of legislative authority because of inadequate legislative primary standards. (Citing such authority as 42 Am.Jur. § 45, p. 342 et seq.; 2 Cal.Jur.2d § 49, p. 102, § 50, p. 103; 11 Cal. Jur.2d § 121, p. 482, § 123, p. 485; *California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 302 [140 P.2d 657, 147 A.L.R. 1028]; *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590, 593 [84 P. 39, 113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A. N.S. 896]; *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436 [254 P.2d 29]; *First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545 [159 P.2d 921].)

It is then pointed out that the Board regulation, adopted by it, recites that "The Board shall promulgate recommended minimum physical standards."

The County Employees Retirement Law of 1937 is a broad statute setting forth in some detail its purpose and method of operation. It provides in section 31525 that: "The Board may make regulations not inconsistent with this chapter. The regulations become effective when approved by the board of supervisors." Government Code, sections 31526 and 31527 specify what the regulations shall or may include in general terms. All of these subjects are briefly stated. Paragraph (f) thereof is one of the permissible provisions allowed to be placed in the regulations. None of the subjects mentioned in these sections are sufficiently complex or difficult to require more than the brief legislative guide which is provided.

It is true that subsection (f) does not detail what hour of the day, in what location, by how many specialists or in what areas of physical condition the examinations must be

given, but these are all matters which can readily be provided by any reasonably competent administrative board and which are likely to vary from county to county. It would be difficult for the Legislature to be more explicit and detailed without destroying the flexibility which is essential. It is obvious that in requiring the medical staff of the county hospital to conduct the physical examinations, some guidance must be given to that staff as to the extent and nature of the examination. If the results of the examination are to be of assistance to the Board of Retirement in determining physical disability and whether it is service or non-service connected, the extent of the examination and the standard or standards against which the persons examined are to be measured to provide this information, are essential. There is no evidence or suggestion that the Board is about to use its authority to annoy or oppress plaintiff or any safety members contrary to law or regulations. ■ Laws are not made upon the theory of the total depravity of those who are elected to administer them, and the presumption is that municipal officers will not use those small powers villainously or for purposes of oppression or mischief. (*Gospel Army* v. *City of Los Angeles*, 27 Cal.2d 232, 239 [163 P.2d 704].)

■ We conclude that the promulgation of minimum physical standards and the requirement of reexamination of safety members failing to meet those standards are essential regulations to effectuate Government Code, section 31527, subdivision (f). (*Nelson* v. *Dean*, 27 Cal.2d 873 [168 P.2d 16, 168 A.L.R. 467]; *Cotter* v. *Wolff*, 88 Cal.App.2d 376, 378 [198 P.2d 950]; *Wyatt* v. *Tahoe Forest Hospital Dist.*, 174 Cal. App.2d 709, 715 [345 P.2d 93]; *Duke Molner etc. Liquor Co.* v. *Martin*, 180 Cal.App.2d 873 [4 Cal.Rptr. 904]; *Eistrat* v. *Board of Civil Service Commrs.*, 190 Cal.App.2d 29 [11 Cal. Rptr. 606].) See also *California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028], where the court held that a statute authorizing the Industrial Welfare Commission to fix minimum wages impliedly authorized that commission to adopt a rule prohibiting an employer from including in the minimum wage of an employee any tips or gratuities received by that employee.

■ Some mention is made in plaintiff's brief that the trial court erroneously refused an offer of proof to the effect that another deputy marshal was told to take a physical examination by the Board; that he went to the hospital and commenced to take a physical examination and he was there

given a form to sign waiving his rights to have the information contained in the physical examination held confidential; that he refused and the physical examination was not given him and he was notified by the Board that due to his failure to take a physical examination he should show cause why his status should not be changed from safety member to regular member. Objection to the offer was made. The court reserved its ruling and it does not appear that it thereafter ruled on the offer. Subsequently, neither party called the court's attention to this proffered evidence or asked for a ruling on it. (*Zellers* v. *State,* 134 Cal.App.2d 270 [285 P.2d 962].) In defendants' reply brief, they state that this form of waiver was one used for job applicants for civil service and was inadvertently included in the examination form used under regulation XI and that the Board immediately had it removed from the required forms upon learning of this error.

It does not appear in the instant case that plaintiff's reason for failure to take the examination was predicated upon this ground or that he was ever asked to sign such a waiver. Under the showing made, the objection to the proffered evidence should have been sustained as irrelevant and immaterial. By stipulation, the parties agreed that Smith "refused to take the physical examination in question, because of a belief on his part of the illegality of the rules and regulations promulgated by the Board in Article 11, and the unconstitutionality of the Statute involved." Government Code, section 31532, fixes and limits the authority of the Board in respect to the claimed privilege. It reads:

"Sworn statements and individual records of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter or upon order of a court of competent jurisdiction."

The principal and more perplexing question revolves around the proposition and contention of plaintiff that he has a contractual right to a pension; that this right is an integral part of the contract of public employment and becomes a vested right at the time the employment began and cannot be destroyed, once it has vested, without impairing the contractual obligation. (Citing *Dryden* v. *Board of Pension Commrs.,* 6 Cal.2d 575 [59 P.2d 104]; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 853 [179 P.2d 799]; *Wallace* v. *City of Fresno,* 42 Cal.2d 180 [265 P.2d 884]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698 [263 P.2d 833].)

It is then argued that the loss of plaintiff's safety-member status as contemplated by the action of defendants will have the effect of substantially reducing the value of his pension rights. (Citing *Allen* v. *City of Long Beach*, 45 Cal.2d 128 [287 P.2d 765]; *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484].) The claim is that if subsection (f), *supra*, and the provision of regulation XI are in fact and do operate as a modification of plaintiff's retirement rights, then they are an invalid impairment of plaintiff's contractual rights since plaintiff previously was not required to take such a physical examination and such requirement was not in effect at the time he was employed and at the time his retirement pension vested. (Citing *Glaeser* v. *City of Berkeley*, 148 Cal.App.2d 614 [307 P.2d 61]; *Krause* v. *Rarity*, 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327].) It is further argued that the requirement that plaintiff take a physical examination and the consequent penalty for his failure to do so, in effect, interposed a penalty or sanction not authorized by the Legislature. (Citing *Harbor Commrs.* v. *Excelsior Redwood Co.*, 88 Cal. 491 [26 P. 375, 22 Am.St.Rep. 321]; *Rible* v. *Hughes*, 24 Cal.2d 437 [150 P.2d 455, 154 A.L.R. 137]; *American Distilling Co.* v. *State Board of Equalization*, 55 Cal.App.2d 799, 805 [131 P.2d 609]; *Blatz Brewing Co.* v. *Collins*, 69 Cal.App.2d 639 [160 P.2d 37].) Defendants argue that the inclusion of a provision designed to require that safety members report for and obtain the required physical examination is not a penalty but, in the words of the Supreme Court, in *California Drive-In Restaurant Assn.* v. *Clark, supra*, 22 Cal.2d 287, is a "provision to make effective" the order requiring periodical physical examinations; that a rule requiring periodical physical examinations but containing no provisions for enforcement would simply invite disregard, particularly by those safety members for whom such examination would be most significant to the Board of Retirement. It is then argued that the loss of safety membership but the retention of regular membership for refusal to take a physical examination is no greater a sanction than the entire loss of employment, which is the sanction held reasonable for the refusal of an employee to wear the required uniform in *Gilmore* v. *Personnel Board*, 161 Cal.App.2d 439 [326 P.2d 874].

According to the evidence received by way of stipulation, Smith, 55 years of age at the time of trial, was contributing to the retirement fund 10.82 per cent of his present salary.

As a regular member, he would have to pay to the retirement fund 7.59 per cent. The county also contributes to the retirement fund for safety members in a like status of plaintiff. The county's contribution would be 21.5 per cent. As a regular member, the county's contribution would be 11.345 per cent. In the status of a safety member, he would have to retire at age 60 and he could retire at age 55; as a regular member, as distinguished from a safety member, he must retire at age 70, but he could retire at age 55. As the result of a change in his status from safety membership to regular membership and assessing these benefits, assuming the plaintiff to be aged 60 with 22 years of service as a safety member, he would receive on retirement from service 57.64 per cent of his final compensation, which is the average of the three highest years of salary. As a regular member at age 60, with 22 years service, plaintiff would receive 42.17 per cent of his final compensation.

 When the plaintiff entered upon his duties and into the service of the county in 1941 he accepted such contract of employment under the laws then existing. The 1937 Retirement Law was adopted in July 1939. By application of plaintiff to the Board and by his election, he became a safety member of the organization and accordingly agreed to be bound by its provisions and the rules and regulations necessarily conferred upon the Board by the Legislature carrying out those provisions. His classification or status as a member was fixed or determined by the Board in accordance with the Retirement Law. As long as plaintiff complied with the Act and rules promulgated, he would be entitled to the benefits flowing therefrom. The subsequent requirement by statute that he and all others of his class take periodical physical examinations is not an unreasonable requirement and was necessary in order for the Board to make certain recommendations for statistical purposes pertaining to the Board's duties, liabilities and contributions to be made and to fix rates. There is no apparent reason why the requirement of a physical examination should not be operative as to plaintiff. Some method to enforce this requirement was necessary for the proper administration of the system. We see no violation of plaintiff's contractual rights in this respect by causing him to show cause why his status should not be reclassified on his refusal to conform to the legitimate purposes of his contract. In *Kern* v. *City of Long Beach*, *supra*, 29 Cal.2d 848, quoting from the syllabus, it was held:

"A public employee may acquire a vested contractual right to a pension, but he does not have a right to any fixed or definite benefits; he is entitled only to a substantial or reasonable pension. Hence the amount, terms and conditions of the benefits may be altered by legislation of the governing body without violating his vested right."

Even under the reclassification, plaintiff would be entitled to a pension.

Lastly, defendant contends that plaintiff did not exhaust his administrative remedies before applying to the court for relief. (Citing *Abelleira* v. *District Court of Appeal,* 17 Cal. 2d 280 [109 P.2d 942, 132 A.L.R. 715].) Defendant points to no administrative remedy provided by law for the relief sought. Under our holding, the question is only academic and not necessary to a decision. However, since the judgment and order granting injunction decree must be reversed, plaintiff will have an opportunity at another date to be fixed by the Board to present his reasons on an appropriate order to show cause, for failure to take the physical examination and to be reclassified. If it should appear that plaintiff's refusal to submit to a physical examination is based on a rule or request of the Board that he first waive all doctor-patient privilege, this requirement would be improper.

Judgment and injunction decree reversed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied October 3, 1961, and respondent's petition for a hearing by the Supreme Court was denied November 1, 1961.