[No. A130659. First Dist., Div. One. Aug. 26, 2011.]

SONOMA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF SONOMA COUNTY, Respondent;
THE PRESS DEMOCRAT, Real Party in Interest.

988

## COUNSEL

Nossaman, Stephen N. Roberts and John T. Kennedy for Petitioner.

Davis Wright Tremaine, Thomas R. Burke and Jeff Glasser for Real Party in Interest.

## OPINION

**MARGULIES, J.**—The trial court ordered the Sonoma County Employees' Retirement Association (SCERA) to disclose to real party in interest, The

Press Democrat, the names of all persons receiving SCERA pension benefits, the gross amount of each recipient's benefit, and the recipient's age at retirement. SCERA petitions for a writ of mandate to overturn the trial court's order, contending the information sought is exempt from disclosure under the County Employees Retirement Law of 1937, Government Code section 31450 et seq. (CERL).[1] We hold SCERA need not disclose the ages of its benefit recipients at retirement, but it must disclose the names of recipients and the gross amount of each recipient's pension benefits.

## I. BACKGROUND

SCERA administers one of 20 defined-benefit county employee retirement plans governed by CERL. Active employees and their employer make contributions that SCERA holds in trust, invests, and uses to pay benefits to retirees and beneficiaries pursuant to formulae established by the Legislature for safety and nonsafety county employees. The amount of a retired member's retirement benefit is calculated using a multifactor formula based upon the individual's status as a public safety officer or general member, age at retirement to the nearest quarter of a year, highest one-year average salary per month, years of county service calculated to two decimal places, purchases of other qualifying service credit, benefit payment option elected, and past postretirement cost of living increases granted.

As required to administer the retirement system, SCERA maintains records for each member, including such information as compensation, years of service, age, addresses, telephone numbers, Social Security numbers, marital status, and information pertaining to the member's beneficiaries. SCERA treats these records as confidential based on its interpretation of section 31532. Section 31532 provides as follows: "Sworn statements and individual records of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter or upon order of a court of competent jurisdiction, or upon written authorization by the member." SCERA does not disclose information pertaining to individual members except as it believes it is authorized by one of the exceptions stated in section 31532.

On August 3, 2010, The Press Democrat sent a request to Gary Bei, administrator of SCERA, pursuant to the California Public Records Act (CPRA), section 6250 et seq. The request asked for "[a] list of all individuals receiving SCERA retirement benefits of at least $100,000 annually, including the names of such individuals, the dates of their retirements and their age at the time of retirement." (Italics omitted.) On September 30, 2010, The Press

---

[1] All statutory references are to the Government Code unless otherwise specified.

Democrat requested "[a] list of all individuals receiving SCERA retirement benefits[, regardless of amounts], including the names of such individuals, the dates of their retirements and their age at the time of retirement." (Italics omitted.) SCERA declined to produce information disclosing retirement allowances linked to individual names and ages at retirement.[2]

On October 8, 2010, The Press Democrat filed a petition for writ of mandate in the superior court seeking production of the requested records. The trial court ordered the records be produced. SCERA filed this petition for writ of mandate to overturn the trial court's order. (§ 6259, subd. (c).) Pursuant to our requests, The Press Democrat filed opposition to the petition and SCERA filed a reply thereto. We issued an order to show cause and, at the parties' joint request, deemed the previously filed opposition and reply to be the return to the order to show cause and the reply thereto.

## II. DISCUSSION

Section 6253 of the CPRA requires public records be produced upon request unless the records sought are made "exempt from disclosure by express provisions of law." (§ 6253, subd. (b).) Section 6254, subdivision (k) exempts from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law." Section 6255, subdivision (a), often referred to as the "catchall exemption," provides that an otherwise nonexempt record may be withheld if "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." SCERA contends in this case the records sought by The Press Democrat are exempt from disclosure as "individual records of members" under section 31532 or, in the alternative, the public interest in protecting the privacy rights of retirees and beneficiaries in their financial information outweighs the public's right to know about its government's activities for purposes of section 6255, subdivision (a).

The California Supreme Court has explained the context and purpose of the CPRA as follows: "Openness in government is essential to the functioning of a democracy. 'Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process.' [Citation.] In adopting the Act, the Legislature declared that

---

[2] SCERA did provide The Press Democrat with a list of the names and effective retirement dates of its retiree members since this information is publicly disclosed when the SCERA board officially retires individuals by action taken at its public meetings.

'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' " (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 328–329 [64 Cal.Rptr.3d 693, 165 P.3d 488] (*International Federation*).) By voter initiative passed in 2004, the linkage between openness and accountability in government is now explicitly recognized in our state Constitution: "The people have the right of access to information concerning the conduct of the people's business, and there-fore, . . . the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).)

Statutory exemptions from compelled disclosure under the CPRA are narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2); *City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1425 [44 Cal.Rptr.2d 532].) The burden of proving a specific statutory exemption applies (or that the public interest in nondisclosure clearly outweighs the interest in disclosure) is on the proponent of nondisclosure. (§ 6255, subd. (a); *International Federation, supra*, 42 Cal.4th at p. 337.) Trial court rulings on CPRA requests are reviewable by petition for writ of mandate. (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 824 [108 Cal.Rptr.2d 870].) We independently review the application of the statute to undisputed facts. (*Ibid.*) Where material facts are disputed, we will uphold the trial court's factual findings if they are supported by substantial evidence. (*Ibid.*)

## A. Exemption for "Individual Records of Members"

The initial question for determination is whether information linking the names of persons receiving SCERA retirement benefits to their gross retire-ment benefits and their ages at retirement is in whole or in part statutorily protected from disclosure by section 31532. For the reasons discussed below, we hold SCERA is required by the CPRA to disclose the names of persons receiving benefits and their gross benefit amounts, but the statute does not, in our view, compel disclosure of the age of individual retirees at their retirement.

### 1. Statutory Ambiguity

"The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In determining legislative intent, we look first to the words of the statute itself. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

If the language of the statute is clear and unambiguous, there is no need for construction. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) But if more than one construction of a statute is semantically permissible, the statute is ambiguous and we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history, to determine its meaning. (*County of Sutter v. Board of Administration* (1989) 215 Cal.App.3d 1288, 1295–1296 [264 Cal.Rptr. 233]; *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) The court may examine the context in which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes. (*County of Santa Clara v. Perry* (1998) 18 Cal.4th 435, 442 [75 Cal.Rptr.2d 738, 956 P.2d 1191].) Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. (*Ibid.*) In the particular context of the CPRA, if there is any ambiguity about the scope of an exemption from disclosure, we must construe it narrowly, as noted earlier.

SCERA insists the phrase "individual records of members" has a plain, all-inclusive meaning in section 31532: it refers to "any . . . information pertinent to a particular individual." Thus, SCERA is contending the statute makes all information a retirement board possesses about a particular member confidential, no matter how such information came into its possession or how the information is kept, stored, or used. But while SCERA's interpretation is linguistically plausible, we do not find it is the only plausible interpretation of the statute. An "individual record" could refer to a record that pertains to a single individual only, as opposed to a record grouping or combining information pertaining to more than one individual. On this view, had the Legislature intended to make all information pertaining to a member confidential it would have used the phrase "records of members" without using the qualifier "individual." A third possible meaning of the phrase would focus on the context in which "individual records" appears—its conjunction with "[s]worn statements" and the fact the words "of members" seem intended to modify both phrases. Viewed in that light, a grammatically plausible interpretation of the statute is that "individual records of members" means information furnished *to* the board about the member, either by the member or by a third party (such as the member's employer or physician), rather than all information pertaining to a member. Under this interpretation, proposed by The Press Democrat, information pertaining to individual members generated *internally* by the retirement board itself, such as its calculation of a retired employee's gross benefit amount, would not be confidential, at least to the

extent disclosure of such information would not disclose information furnished to the board by or about the individual.[3] Accordingly, because SCERA's proposed reading of the statute is not the only interpretation to which it is reasonably susceptible, we turn to extrinsic sources for guidance in interpreting it. (*People v. Flores* (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979].)

## 2. *Legislative History*

The "individual records" language in section 31532 was added by legislative amendment in 1957. (Stats. 1957, ch. 1386, § 2, p. 2719.) Prior to that time, the section had provided: "Sworn statements of members shall be confidential and shall not be disclosed to anyone except insofar as may be necessary for the administration of this chapter." (Stats. 1949, ch. 1228, § 11, p. 2161.) Then as now, CERL had required county retirement boards to adopt regulations that include a provision for each member to file a "sworn statement" showing the member's "date of birth, nature and duration of employment with the county, compensation received, and such other information as is required by the board." (§ 31526, subd. (b); see Stats. 1937, ch. 677, § 43.5, p. 1901; *Sacramento Retirement System, supra,* 195 Cal.App.4th at p. 456.) We have reviewed the surviving legislative records pertaining to the 1957 amendment, and find nothing in them that sheds light on the Legislature's intent in providing for the confidentiality of individual records.

The 1957 bill amending section 31532 also added a provision requiring the periodic physical examination of safety members, at county expense. (*Sacramento Retirement System, supra,* 195 Cal.App.4th at p. 461.) However, the legislative history shows the individual records language added to section 31532 was in the bill as introduced while the provision regarding physical examinations was not added until the bill was later amended. (Assem. Bill No. 3015 (1957 Reg. Sess.) § 2; Assem. Amend. to Assem. Bill No. 3015 (1957 Reg. Sess.) Apr. 11, 1957, § 1.) We are therefore reluctant to infer the Legislature's sole or primary intent in making "individual records" confidential was to protect the records of these examinations from disclosure. On the other hand, there is no dispute in this case that medical records pertaining to a member are protected by section 31532, if not by other CPRA exemptions. The only published case prior to *Sacramento Retirement System* mentioning

---

[3] This interpretation of section 31532 is similar although not identical to those recently adopted by the Third and Fourth Appellate Districts in parallel cases involving third party requests for pension benefit information concerning retired members of the Sacramento and San Diego County retirement systems. (See *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440 [125 Cal.Rptr.3d 655] (*Sacramento Retirement System*) and *San Diego County Employees Retirement Assn. v. Superior Court* (2011) 196 Cal.App.4th 1228 [127 Cal.Rptr.3d 479] (*San Diego Retirement Assn.*).) See discussion, *post.*

section 31532, *Smith v. Nettleship* (1961) 195 Cal.App.2d 393 [15 Cal.Rptr. 836], *assumed* it would apply to reports on medical exams required to be given to safety members, but does not otherwise opine about the scope of the individual records language. (*Id.* at pp. 396–397, 401–402.)

### 3. *Attorney General Opinions*

The most significant items of extrinsic evidence concerning section 31532 are two Attorney General opinions decided in the two years preceding adoption of the 1957 amendment to the statute. (See *State Employees' Retirement Act*, 25 Ops.Cal.Atty.Gen. 90 (1955) (hereafter *1955 Opinion*); *State Employees' Retirement System*, 27 Ops.Cal.Atty.Gen. 267 (1956) (hereafter *1956 Opinion*).) These opinions construe the following confidentiality language contained in former section 20134, which was added to the Public Employees' Retirement Law (PERL; § 20000 et seq.)[4] in 1953: "Data filed by any member or beneficiary with the board is confidential, and *no individual record shall be divulged* by any official or employee having access to it to any person other than the member to whom the information relates or his authorized representative, the contracting agency by which he is employed, any state department or agency, or the University. Such information shall be used by the board for the sole purpose of carrying into effect the provisions of this part." (Former § 20134, italics added; Stats. 1953, ch. 1186, § 6, p. 2686.)[5]

■   Attorney General opinions about the scope of a parallel confidentiality provision in a closely related retirement law are relevant and important in two respects. "First, 'When construing a statute, we may presume that the Legislature acts with knowledge of the opinions of the Attorney General which affect the subject matter of proposed legislation.' [Citation.] Second, 'While not binding on us, the opinions of the Attorney General are entitled to great weight.' " (*Sacramento Retirement System, supra*, 195 Cal.App.4th at pp. 455–456.) Consideration of Attorney General opinions "is particularly appropriate where . . . no clear case authority exists, and the factual context of the opinions is closely parallel to that under review." (*Thorpe v. Long Beach Community College Dist.* (2000) 83 Cal.App.4th 655, 662–663 [99 Cal.Rptr.2d 897].)

---

[4] Originally enacted in 1931, PERL established a retirement system (now known as the California Public Employees' Retirement System or CalPERS) for employees of the state as well as participating counties and other local public agencies. (§§ 20002, 20022; *Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 107 [113 Cal.Rptr.3d 417].) Twenty counties have instead elected to operate their own retirement systems under the auspices of CERL. (See § 31500.)

[5] Section 20134 was later renumbered as section 20230. (Stats. 1995, ch. 379, § 2, p. 1989, amended by Stats. 1996, ch. 927, § 2, p. 5283.)

The 1955 opinion addressed a question posed not by the CalPERS board, but by the State Controller (Controller). The Controller sought guidance as to whether he could lawfully divulge whether a former state employee was in fact being paid a retirement allowance and the amount of such allowance. The opinion concluded the Controller could make such a disclosure notwithstanding the confidentiality requirement of section 20134.

In the course of his opinion, the Attorney General listed as examples of information "guarded by section 20134" the "addresses of members and beneficiaries, statements as to age and disability, names of relatives and dependents, retirement option elections and similar matters," and observed that CalPERS utilized such "guarded information" to calculate the monthly payment due each beneficiary. (*1955 Opinion, supra*, 25 Ops.Cal.Atty.Gen. at p. 91.) Then, using those previously calculated amounts, CalPERS "makes up and certifies to the Controller a monthly claim, supported by a roll which bears the names of individual payees and the amounts of individual payments." (*Ibid.*) Crucially, the opinion held that this roll was not an " 'individual record' " even though it contained information about individual beneficiaries: "This roll is not 'data filed by any member or beneficiary,' nor is it an 'individual record.' Rather it is a *composite document* which is the written act or record of the act of a public officer [citation]. Thus *the roll* is outside the limited class of records guarded by section 20134 . . . . In our view, therefore, the *names and amounts shown on the roll* are open to public inspection. Consequently, the identical information shown in the Controller's warrant records is *also* open to inspection by citizens of the State." (*Ibid.*, italics added.)

As analyzed in the 1955 opinion, the duty to disclose arose under Government Code former section 1227, which provided: " 'The public records and other matters in the office of any officer, except as otherwise provided, are at all times during office hours open to inspection of any citizen of the State.' " (*1955 Opinion, supra*, 25 Ops.Cal.Atty.Gen. at p. 90.) The opinion began by explaining why, under former section 1227 and related statutes defining public records, there was no question "the Controller's records of expenditures from the State Treasury" were generally open to public inspection. (*1955 Opinion*, at p. 90.) Thus, the question to be resolved was whether former section 20134 created an exception for records provided by CalPERS. Although the opinion did not consider or decide whether records in the possession of CalPERS were also subject to former section 1227, its conclusion that "the roll is outside the limited class of records guarded by section 20134 and . . . therefore, the names and amounts shown on the roll are open to public inspection" (*1955 Opinion*, at p. 90) strongly implies the names and amounts would have been held to be open to public inspection in CalPERS's offices, as well as the Controller's office, had such a question been posed to the Attorney General.

As we read it, the 1955 opinion is thus significant in four respects. First, it starts from the premise that *records of expenditures from public funds are open to public inspection,* even in the case of funds earmarked for public employee pensions. Second, the opinion undercuts SCERA's position that "individual record" means *any* information pertinent to an individual member or beneficiary without regard to its content or the manner in which it is held. Third, it distinguished between the amounts of pension benefits paid, which it held to be subject to disclosure, and the information used to calculate the amounts, which it found to be "guarded" by former section 20134. Finally, although the opinion applied only to whether the *Controller* had a duty to provide the unprotected information, its reasoning applied equally to CalPERS itself.

The 1956 opinion involved a request by the CalPERS board as to whether 11 separate categories of information appearing in its records were subject to public disclosure, including six that implicated former section 20134. The relevant categories included "[t]he amount and detail of calculation of the service or disability retirement allowance payable" to a retired member, medical or psychiatric reports about the member, outgoing correspondence with the member or member's employer, and records pertaining to the member's accumulated and purchased service credit. (*1956 Opinion, supra,* 27 Ops.Cal.Atty.Gen. at pp. 267–268.) The 1956 opinion held section 20134 made two distinct categories of information confidential: " '[d]ata filed by any member or beneficiary with the board,' " and members' "individual records." (*1956 Opinion,* at p. 268.) It expressly rejected the notion that the two categories were identical, since that would mean a member's name, address, and date of birth would be confidential, but "the amount of his contributions and any reports as to his physical and mental condition"— which the opinion observed were even more deserving of protection—"would be available for inspection for anyone who desired to do so." (*Ibid.*) To avoid this result, the 1956 opinion posited instead that "all information pertaining to the individual and not simply that which is given by him is to be protected." (*Ibid.*) Noting former section 20134's express authorization for release of information to a member or his authorized representative, the opinion reasoned it would have been unnecessary to include such a provision if the member's individual record consisted entirely of information the member had himself provided. Rather, "[w]hat the member would be seeking," and therefore what the statute must additionally be intended to protect from public disclosure, would be "information [about the member] coming from other persons." (*1956 Opinion,* at p. 269.) The opinion concludes, "The information which is not to be divulged except to authorized persons *does then include the material which is obtained from sources other than the member.*" (*Ibid.,* italics added.)

In its sole reference to the 1955 opinion, the 1956 opinion states: "Although the same information which, so far as the [state employees' retirement] system is concerned, is confidential may be obtained from other sources (see 25 Ops.Cal.Atty.Gen. 90), this in no way eases the secrecy imposed by Government Code section 20134. It is the fact that the data is in the records of the system that makes it confidential, not the inaccessibility of the information elsewhere." (*1956 Opinion, supra,* 27 Ops.Cal.Atty.Gen. at p. 270.) The 1956 opinion did not discuss the substance of the 1955 opinion, or the reasoning process by which it had arrived at its conclusion that the names and benefit amounts of retirement system beneficiaries were not confidential. It also did not address the fact that one of the categories of information about which the retirement board had inquired—"[t]he amount and detail of calculation of the service or disability retirement allowance payable" (*id.* at p. 267) to a retired member—was arguably subject, in part, to the same analysis used in the 1955 opinion.

It is true, as SCERA contends, that the 1956 opinion contains an inclusive definition of "individual records"—"all information pertaining to the individual"—that is consistent with SCERA's position concerning section 31532. Read closely, however, the opinion is mainly concerned with the question of whether the term "individual records" includes information provided to the retirement system *about* members, or only information provided *by* them. The opinion's "all information" formulation seemed to be intended to ensure both of these categories of information would be covered so that medical and psychiatric reports would not be left unprotected merely because they are not provided by members. The opinion fails to consider that gross benefit payment amounts calculated by the retirement system are *neither* information supplied by the member *nor* information submitted to the retirement system about the member.

Further, the comment made in the opinion that "[i]t is the fact that the data is in the records of the system that makes it confidential, not the inaccessibility of the information elsewhere" (*1956 Opinion, supra,* 27 Ops.Cal.Atty.Gen. at p. 270), is offered without legal authority or a reasoned argument. The quoted comment was of questionable validity at the time it was made in light of the 1955 opinion, and it is certainly not a correct statement under current public records law. It is difficult to see how a governmental agency can, without waiving a statutory exemption for its records, turn them over to another agency knowing the other agency must divulge them to the public upon request. (See § 6254.5, subd. (e); *County of Los Angeles v. Superior Court* (2005) 130 Cal.App.4th 1099, 1107 [30 Cal.Rptr.3d 708] [disclosure of an otherwise exempt public record to another governmental agency waives the exemption unless the recipient agency agrees to treat the document as confidential].)

One further Attorney General opinion bears mention. In 1977, the county counsel of Marin asked the Attorney General to opine on whether in light of section 31532 county payroll records maintained by the auditor/controller could be inspected for (1) names and amounts received by retirees; and (2) information regarding pending disability claims, including hearing transcripts, medical reports, witness depositions, and workers' compensation board decisions. (*County Payroll Records as Public Records*, 60 Ops.Cal.Atty.Gen. 110 (1977) (*1977 Opinion*).) The 1977 opinion held the first category were public records subject to disclosure by the auditor/controller notwithstanding section 31532. It expressly relied for that conclusion on the 1955 opinion concerning former section 21034. It quoted at length from the 1955 opinion, including its view that the monthly roll of retirees and benefit amounts created to facilitate payment was neither data filed by any member nor an individual record. The 1977 opinion added nothing new in that regard to the analysis contained in the 1955 opinion. Regarding the disclosure of information on pending disability claims, it quoted extensively from the 1956 opinion, including its seemingly inconsistent formulation that "individual records" encompass all information pertaining to the individual. The 1977 opinion cited and relied upon the two earlier opinions as if their interpretations of the term "individual records of members" were entirely consistent with one another.

### 4. *Recent Supreme Court Authority*

Two California Supreme Court cases applying the CPRA are also highly relevant to our interpretation of section 31532. In *International Federation*, the Supreme Court held the names and gross salaries of all City of Oakland employees earning $100,000 or more per year were subject to disclosure under the CPRA, notwithstanding that the information was maintained within individual personnel files containing other content—" '[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy' "—that was exempt from disclosure under section 6254, subdivision (c). (*International Federation, supra*, 42 Cal.4th at pp. 329–330.) In the course of its holding, the court drew support from the 1955 and 1977 opinions, describing the 1955 opinion as "concluding that state-paid retirement benefits are public records." (*International Federation*, at p. 331.) The court cited these opinions as evidence of what it characterized as "[t]he Attorney General's long-standing position that government payroll information is public." (*Ibid.*) The 1956 opinion was not mentioned in *International Federation.*[6]

---

[6] *International Federation* also teaches that "[w]hether or not a particular type of record is exempt should not depend upon the peculiar practice of the government entity at issue— otherwise, an agency could transform public records into private ones simply by refusing to disclose them over a period of time." (*International Federation, supra*, 42 Cal.4th at p. 336.) We therefore reject SCERA's argument that its own practice of treating individual benefit

In *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278 [64 Cal.Rptr.3d 661, 165 P.3d 462] (*CPOST*), the Supreme Court held certain employment data pertaining to California peace officers maintained by a statewide commission on peace officer training was not exempt from disclosure, notwithstanding that Penal Code section 832.7 exempted peace officer "personnel records" from disclosure. (*CPOST*, at p. 284.) "Personnel records" were defined to include certain enumerated categories of information, such as medical history, benefits elections, and disciplinary records, as well as " 'any file . . . containing records relating to' " the enumerated categories. (*Id.* at pp. 289–290.) Based on the latter clause, the commission argued that a confidential personnel record included any information maintained in a file that also contained information falling into one or more of the enumerated categories. (*Id.* at p. 290.) The court rejected this argument as follows: "Under [this] interpretation, the circumstance that a document was placed into a file that also contained the type of personal or private information listed in the statute would render the document confidential, regardless of whether the document at issue was of a personal or private nature, and regardless of whether it was related to personnel matters. . . . [¶] We consider it unlikely the Legislature intended to render documents confidential based on their location, rather than their content . . . [or] that a public agency be able to shield information from public disclosure simply by placing it in a file that contains [exempt] information . . . ." (*Id.* at pp. 290–291.)

■ *International Federation* thus confirms that government payroll information—whether it be the salaries of active public employees or the gross pension amounts paid to retirees—is public information that cannot be kept confidential unless it is explicitly made so by statute. *CPOST* establishes that the particular details of how such public information is filed, organized, or maintained by a public agency cannot, without express legislative direction, diminish its public character. Both of these principles must inform our interpretation of section 31532, along with the constitutional requirement that statutory exemptions from disclosure under the CPRA be narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2).)

### 5. *Inferences Concerning the Scope of Section 31532*

Presuming the Legislature was aware of the 1955 and 1956 opinions when it amended section 31532 in 1957, we believe certain inferences may be drawn concerning legislative intent. First, by adding essentially the same language to CERL that had been adopted a few years earlier in section 20134 for persons subject to PERL, the Legislature intended to afford CERL

---

information as confidential, which it concedes is not the universal practice among CERL retirement systems, should be given "great weight" in construing the statute.

retirement plan participants the same level of confidentiality as CalPERS members. There was no rational reason for the Legislature to treat public employees and pensioners subject to the two laws differently in that respect.

Second, in light of the 1955 opinion, the Legislature could not have believed that by adding the "individual records" language to section 31532 it would be protecting CERL retirees from the disclosure of their benefit amounts. In our view, the Legislature would have relied on the 1955 opinion rather than the 1956 opinion on the issue of whether benefit amounts were confidential. Unlike the later opinion, the 1955 opinion was specific to that one issue. The 1956 opinion was primarily focused on a different question—whether a member's "individual records" included data filed *about* members, such as medical reports, or only data filed by the member. In trying to address that question it utilized overly broad language ("all information pertaining to the individual"), but we do not believe the 1956 opinion was in fact intended to revisit the question of whether benefit amounts—which are neither data filed by the member nor data submitted to the board about the member—were confidential.

Third, we also decline to impute to the Legislature an intent to base the confidentiality or lack of confidentiality of retirement benefit information on the details of how monthly retirement checks are processed in a particular jurisdiction, or on the particular agency of government to which a request for such information is addressed. Certainly those types of distinctions no longer make sense in light of contemporary CPRA jurisprudence and the enactment of a constitutional right of access to information concerning the conduct of the public's business. Thus, whether a retirement board prints and issues the checks itself or sends a monthly payment roll to the county controller—or whether it creates a composite document or database at all—should have no bearing on the confidentiality or public character of the information. (See *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1294 [48 Cal.Rptr.3d 183, 141 P.3d 288] [doubtful the Legislature intended to make one peace officer's confidentiality rights regarding complaints greater than another's because of the fortuity of how the two officers' jurisdictions handle such complaints]; *CPOST, supra,* 42 Cal.4th at p. 291 ["We consider it unlikely the Legislature intended to render documents confidential based on their location, rather than their content."].)[7]

---

[7] SCERA argues the Legislature intended to treat retirees differently depending on whether they are under PERL or CERL. It points to a 1985 amendment to section 20134 adding language specifying the names and gross pension benefit of CalPERS retirees were not confidential. (Stats. 1985, ch. 1508, § 1, p. 5559.) According to the legislative history, the Controller had been releasing this information routinely, but CalPERS was referring benefit inquiries to the Controller. (Sen. Public Employees and Retirement Com., Analysis of Sen. Bill No. 808 (1985–1986 Reg. Sess.) May 20, 1985, p. 3.) SCERA contends the

We also note the 1955 opinion was written in an era when recordkeeping was done by holding paper documents in physical files. With the advent of electronic and digital storage media and data processing technologies, the opinion's distinction between individual and composite records seems antiquated today even if it might have been a colorable interpretation of the statutory language in 1955. In that regard, SCERA advises that "[d]ue to . . . modern techniques for electronic management of information," it has "no need . . . to generate any form of collective or composite list combining the names and the specific benefit amounts of retirees" in order to process monthly benefit payments, and provides no such list to any entity outside of SCERA.[8]

But even if technological advances have rendered much of the 1955 opinion's reasoning obsolete, the opinion's starting premise—that the records of expenditures of public funds must be open to public inspection—has even greater force today than it had in 1955. Article I, section 3 of the California Constitution, the CPRA, and contemporary California Supreme Court jurisprudence compel the conclusion that the public is entitled to have access to such records whether held by the Controller's office, the county auditor/controller, or SCERA.

■ Fourth, we believe the Legislature's intent in 1957 was primarily to ensure that information about members given to CERL retirement systems by third parties, such as employers and doctors, would have the same confidentiality as the information the members were required to provide about

---

Legislature's failure to make a similar change to section 31532 evidences its intent that such information was to be treated as confidential under CERL. However, the analyses of the bill prepared by the policy committees of both houses characterized the bill as *clarifying existing law* that the gross amounts of CalPERS members' benefits were *not* confidential. (Sen. Public Employees and Retirement Com., Analysis of Sen. Bill No. 808 (1985–1986 Reg. Sess.) May 20, 1985, p. 1; Assem. Public Employees and Retirement Com., Analysis of Sen. Bill No. 808 (1985–1986 Reg. Sess.) July 10, 1985, p. 1.) That is how we construe the amendment, and we therefore draw no inference from the Legislature's failure to add similar language to section 31532.

[8] SCERA has asked us to take judicial notice of certain documents evidencing significant legislative as well as technological changes in the administration of CERL retirement systems since 1955. We grant the request in part, solely with respect to the legislative history of sections 31452.6, 31522.1, 31580.2, 31588, and 31590. The legislative history establishes that CERL retirement systems were not authorized to establish and independently administer their own trust fund accounts for the payment of retirement benefits until 1995. (See Stats. 1995, ch. 584, §§ 4.5, 6, pp. 4486–4487, amending former §§ 31588, 31590.) Until that year, counties operating retirement systems subject to CERL were required to carry trust accounts for the payment of retirement benefits on their own books, and retirement benefit warrants had to be signed by the county treasurer and auditor. (See Assem. Bill No. 1021 (1995–1996 Reg. Sess.) § 1; Sen. Amend. to Assem. Bill No. 1021 (1995–1996 Reg. Sess.) as amended June 19, 1995, § 4.) Thus, after 1995, county payroll records maintained by the county auditor/controller would not necessarily include the names of and pension benefits received by county retirees, as had been the case when the 1977 opinion was written.

themselves in their sworn statements. The Legislature would have reasonably understood that the "individual records of members" in section 31532 would encompass the types of information held to be confidential by *both* the 1955 and 1956 opinions: the amount of a member's monthly and accumulated retirement contributions, records and statements of physical or mental disability, outgoing correspondence to the member or member's employer, service credit records including cost and purchase information for special service credits, and the *details* of how retired members' monthly gross benefit amounts were calculated (but not the resulting amounts).

As we construe the confidentiality provisions of section 31532 (members' "[s]worn statements" and "individual records"), they therefore encompass all otherwise nonpublic information furnished to the board either *by* the member or by any third party *about* an individual member. This formulation protects such personal information as the member's birth date and age, but does not protect otherwise public information such as the department or agency the member retired from or their salary at retirement. Most importantly, section 31532 also does not protect the names and gross benefit amounts of retired members or their beneficiaries, since the gross benefit amounts are calculated by the retirement system itself.[9]

The fact that benefit amounts might be calculated using confidential information does not affect our conclusion. The California Supreme Court specifically rejected an argument that police officer salaries should not be publicly disclosed because the salaries were calculated using information contained in personnel records made confidential by statute. (*International Federation, supra*, 42 Cal.4th at pp. 343–344.) The court held the statutes in question "do not mandate that city payroll records reflecting peace officer salary information be excluded from disclosure merely because some of the facts relied upon in determining the amount of salary may be recorded in the agency's personnel files." (*Id.* at p. 344.) It found that the statutes would only bar disclosure of information that " 'actually reflect[ed]' " specifically enumerated categories of personal data about the officer, and that records of salary expenditures did not reflect any of the protected items. (*Id.* at p. 346.) Here, due to the number of variables involved in calculating a retiree's benefit, disclosing the amount of the benefit does not disclose any of the otherwise confidential information used to determine it.

The court in *Sacramento Retirement System, supra*, 195 Cal.App.4th 440, held that "individual records" in section 31532 means information provided to the retirement system "by a member *or on the member's behalf* . . . ." (*Sacramento Retirement System*, at p. 463, italics omitted &

---

[9] The Fourth Appellate District reached a similar conclusion in *San Diego Retirement Assn., supra*, 196 Cal.App.4th at pages 1237, 1241.

added.) We hold here that the statute makes confidential *all* otherwise nonpublic information submitted to a CERL retirement system by or about individual members. We believe the two interpretations are for all practical purposes the same despite the slight difference in wording. While we are unsure of what information, if any, pertaining to a member the court in *Sacramento Retirement System* meant to exclude by its use of the phrase "on the member's behalf," we have no doubt that its intended scope is quite expansive and would include, for example, medical reports pertaining to the member even if—as in *Smith v. Nettleship, supra,* 195 Cal.App.2d 393—the reports are required by the county and not welcomed by the member. (See discussion in *Sacramento Retirement System,* at p. 461.) To the extent that information furnished "on the member's behalf" in fact includes virtually all otherwise nonpublic information about a member that might be submitted to the retirement system, we believe the result we reach is consistent with that adopted in *Sacramento Retirement System.*

██    As applied to the specific issues before us, a member's date of birth and age at retirement would be protected from disclosure either as part of a member's "sworn statement" (see § 31526), or as otherwise nonpublic information about the member supplied to the board by the member or a third party.[10] The names of each retired county employee or beneficiary, and amount of benefits each receives, on the other hand, are not made confidential by section 31532.

We turn now to SCERA's alternative statutory argument that the names and gross pension amounts of beneficiaries are exempt from disclosure under section 6255, subdivision (a).

B.   *Catchall Exemption*

SCERA contends that on the facts of this particular case its retired members' right to financial privacy clearly outweighs the public interest served by disclosing the monthly gross pension amounts they receive. According to SCERA, the public exposure of retiree and beneficiary pension incomes will unfairly expose them to scam artists, identity theft, sales solicitations, and even to other family members who will seek to prey on them. SCERA seeks to distinguish its retired members from active employees in that regard. SCERA points out half of its retirees are over 65 years old, an

---

[10] Other examples of records protected by section 31532 would be records and information concerning the members' contributions and individual accounts, regular and special service credits, beneficiary or option selections, and correspondence with the board; any reports or information on the members' medical or psychological status or condition; and personal information such as the members' contact and address information, names of relatives, and Social Security numbers.

age category specially protected by state statutes on elder abuse. (See Welf. & Inst. Code, § 15600 et seq.) SCERA also argues the taxpaying public has a lesser interest in the amounts of public employee pensions than it does in the public salaries of active employees since only about 20 percent of retired public employee pensions are financed by tax dollars, with the rest funded by member contributions and investment returns. SCERA maintains retirement allowances are based primarily on the retirees' individual retirement decisions, such as how many years they will work and whether to invest their own money in purchasing service credit. According to SCERA, knowing the gross pension amounts paid to named individuals affords the taxpaying public with very little pertinent information about pension costs and liabilities over and above that provided by the extensive aggregate data SCERA has already provided about its pension payouts.

■ The Supreme Court held in *International Federation* that information about public payrolls does not violate the right to privacy: "The salary information sought by the Newspapers in the present case . . . is not private information that happens to be collected in the records of a public entity. Rather, it is information regarding an aspect of government operations, the disclosure of which contributes to the public's understanding and oversight of those operations by allowing interested parties to monitor the expenditure of public funds. The disclosure of such information under the Act does not violate the right of privacy protected by the California Constitution." (*International Federation, supra*, 42 Cal.4th at p. 340.) The majority in *International Federation* also observed, "Counterbalancing any cognizable interest that public employees may have in avoiding disclosure of their salaries is the strong public interest in knowing how the government spends its money." (*Id.* at p. 333.)

We believe the same principles apply here. The asserted fact that only 20 percent of what SCERA pays in benefits comes *directly* from public employer contributions does not change the public character of the benefits. Most of the rest arises from investment returns on *public* contributions, with only 10 percent coming from the employees' personal contributions, according to SCERA. Moreover, defined benefit pensions are ultimately backed by the public treasury if investment returns and personal contributions are inadequate to fully fund them. Furthermore, although SCERA members do make private contributions to their retirement, the program SCERA administers is in the end a form of deferred *public* compensation for county employees. (See *Sacramento Retirement System, supra*, 195 Cal.App.4th at p. 469, and cases cited therein.) As such, the taxpaying public has substantially the same interest in its operations and payout levels as it does in the salaries of county employees.

With regard to the claimed special vulnerability of elderly persons to financial predation, we note our ruling will not result in the release of home addresses, telephone numbers, or e-mail addresses of retirees and beneficiaries. While that information may be obtainable from other sources in some cases, the exclusion of contact data from disclosure diminishes the force of SCERA's argument. In response to a similar claim that releasing the salaries of city employees would expose them to unwanted solicitations, the court in *International Federation* found: "The interest of employees in avoiding unwanted solicitations or marketing efforts is . . . comparatively weak. The City has not been asked to disclose any contact information for these employees, such as home addresses or telephone numbers." (*International Federation, supra*, 42 Cal.4th at p. 339.) We find SCERA's claim that releasing information to the public about pension benefits will expose its retirees to annoyance and abuse too speculative to outweigh the public's interest in securing information about how public money is spent.

As for the public's interest in knowing the pension amounts being paid to named individuals, we note the court in *International Federation* took judicial notice of "articles published throughout the state that used information concerning public employee salaries to illustrate claimed neptism, favoritism, or financial mismanagement in state and local government." (*International Federation, supra*, 42 Cal.4th at p. 334.) At The Press Democrat's request, we have taken judicial notice of media articles concerning asserted pensions abuses in various jurisdictions around the state, in which it is alleged named individuals were able to unfairly boost their retirement income at the public's expense through controversial practices such as pension spiking and double dipping.[11] While we venture no opinion on the validity of the allegations made in the articles, we agree with The Press Democrat the public's interest in knowing the names and pension amounts of SCERA retirees and beneficiaries is substantial, and SCERA has failed to demonstrate such interest is clearly outweighed by the members' privacy interests.

## III. DISPOSITION

Let a peremptory writ of mandate issue, commanding respondent Sonoma County Superior Court to set aside that portion of its order filed November 12, 2010, in *The Press Democrat v. Sonoma County Employees' Retirement*

---

[11] We deferred a decision on The Press Democrat's request until we reviewed SCERA's petition on the merits. We now grant the request. As to exhibits A through I, we grant the request for the limited purposes of (1) showing the public's interest in and concern about public pensions, and (2) establishing the potential uses of and public interest in data on the pension payments received by individuals. We also grant the request as to the legislative history pertaining to sections 20230 and 31532.

*Assn.* (Super. Ct. Sonoma County, case No. SCV248399) granting the request of The Press Democrat for disclosure of the age at retirement of each retired county employee receiving pension benefits and to instead deny that request.

Pending issuance of the remittitur herein, the portion of the November 12, 2010 order requiring disclosure of the age at retirement of each retired county employee receiving pension benefits is stayed.

In all other respects, the petition for writ of mandate is denied. The parties shall bear their own costs.

Marchiano, P. J., and Dondero, J., concurred.